**WORLD AIRWAYS, INC., Defendant, Appellant,**

v.

**NORTHEAST AIRLINES, INC., Plaintiff, Appellee.**

**NATIONWIDE CHARTERS AND CONVENTIONS, INC., et al., Defendants, Appellants,**

v.

**NORTHEAST AIRLINES, INC., Plaintiff, Appellee.**

Nos. 6470, 6471.

United States Court of Appeals First Circuit.

Heard May 4, 1965.

Decided Aug. 30, 1965.

Earle C. Cooley, Boston, Mass., with whom C. Keefe Hurley, Boston, Mass., was on brief, for appellant in No. 6470.

Gael Mahony, Boston, Mass., with whom Henry S. Healy and Hill & Barlow, Boston, Mass., were on brief, for appellants in No. 6471.

Verne W. Vance, Jr., Boston, Mass., with whom Henry E. Foley, Laurence S. Fordham and Foley, Hoag & Eliot, Boston, Mass., were on brief, for appellee.

Before ALDRICH, Chief Judge, BREITENSTEIN,* Circuit Judge, and GIGNOUX, District Judge.

BREITENSTEIN, Circuit Judge.

These consolidated appeals attack temporary and permanent injunctions issued by the district court on the complaint of the plaintiff-appellee Northeast Airlines, Inc., (Northeast) restraining defendants-appellants World Airways, Inc., (World), Nationwide Charters and Conventions, Inc., (Nationwide), and Harold Low, the president and sole stockholder of Nationwide, from engaging in certain activities which the district court held to be in violation of the certificate of authority issued by the Civil Aeronautics Board (CAB) to World.

Northeast holds temporary authority from CAB to provide scheduled air trans-

* By designation.

portation in the so-called East Coast-Florida air travel market.[1] World is a certificated supplemental air carrier authorized by CAB to engage in charter trips. Nationwide is a travel agency which, in addition to the ordinary activities of such an agency, promotes and arranges travel by charter groups.

In the certificate of authority issued by CAB to World "charter trips" are defined thus:

> " * * * air transportation * * * where the entire capacity of one or more aircraft has been engaged on a time, mileage, or trip basis:
>
>      *      *      *      *      *      *
>
> > (b) By a person (no part of whose business is the formation of groups or the consolidation of shipments for transportation or the solicitation or sale of transportation services) for the transportation of a group of persons and/or their property, as agent or representative of such group;
>
>      *      *      *      *      *      *
>
> and where such air transportation does not include services (i) offered by or on behalf of the holder hereof [World] for the carriage of individual members of the general public who are formed into or joined with any group with the direct or indirect assistance or participation of the holder hereof, or (ii) performed under an arrangement with a person * * * who provides or offers to provide transportation to the general public, * * *."

On August 13, 1964, World and Nationwide entered into an arrangement called a "Sales Agency Agreement." World made Nationwide its agent to sell the "capability" of a certain aircraft for 262 flights over the period December, 1964, to May, 1965.[2] Nationwide agreed "to sell a sufficient number of aircraft charter agreements to Bona Fide Charter Groups" to utilize the aircraft capability on the listed flights except for 44 permissibly cancellable flights. Nationwide was required to make a cash deposit to assure performance and payment, to pay certain "Administrative Costs," and to pay certain liquidated damages in the event of impermissible flight cancellations. The contract spelled out in some detail the control of World over the execution of charter agreements, representations concerning the flights, solicitations, and advertising. The trial court held the August 13 document to be "a contract on the part of World to provide its aircraft to Nationwide, a part of whose business is the formation of groups for air transportation" which violated the definition of "charter trips" in the World certificate, and entered summary judgment for Northeast.

In separate motions to dismiss the complaint the appellants attacked the jurisdiction of the court. They first say that Northeast is not a "party in interest" within the meaning of 49 U.S.C. § 1487 (a). That section confers jurisdiction on United States district courts in actions brought by CAB for violations of Chapter 20, Title 49, U.S.C.[3] and provides that "in the case of a violation of section 1371 (a) of this title, any party in interest

---

1. CAB by order E-19910, August 15, 1963, denied Northeast's application for renewal of its temporary certificate. This court set aside that order and remanded the case for further proceedings. Northeast Airlines, Inc. v. Civil Aeronautics Board, 1 Cir., 331 F.2d 579. After remand, CAB again denied renewal. Order E-21550, New York-Florida renewal case. On April 13, 1965, this court remanded a second time for further proceedings. Northeast Airlines, Inc. v. Civil Aeronautics Board, 1 Cir., 345 F.2d 484. CAB, on April 26, 1965, announced that it was reopening the proceedings to consider the issues afresh in the light of the most recent data. On May 11, 1965, this court approved the CAB order and relinquished jurisdiction. On May 19, 1965, it denied motions to stay the May 11 order, 345 F.2d 488. There the matter stands.

2. The flights were from Boston, New York, and Philadelphia to Miami and from New York to Honolulu, with return flights from each destination city.

3. 49 U.S.C. §§ 1301–1542.

may apply" to enforce obedience or restrain violations. Section 1371(a) prohibits an air carrier from engaging in any air transportation "unless there is in force a certificate issued by the Board authorizing such air carrier to engage in such transportation."

We have found no helpful judicial interpretation of §§ 1487(a) and 1371(a). Civil Aeronautics Board v. Modern Air Transp., Inc., 2 Cir., 179 F.2d 622, was a suit by CAB and the question of the jurisdiction of the district court to entertain an injunction action on the suit of a private party was expressly reserved.[4] The meaning and the application of the statutes to the dispute are clear to us. Northeast, a scheduled carrier serving the East Coast-Florida points, is affected by charter operations covering about 200 flights between those points by a chartered aircraft carrying 180 passengers at a charter price of over $10,000 for each round trip.[5] The interest of Northeast in injunctive relief is enhanced by the fact that the World-Nationwide contract covered flights for the period December 19, 1964, to May 5, 1965. The time consuming enforcement procedures of CAB [6] followed by review in a court of appeals would have permitted completion of the contract and left Northeast with the illusory remedy of damages.

The appellants do not appear to question seriously the interest of Northeast. Rather they argue that the courts have jurisdiction on the complaint of a private party only when the defendant is operating without any authority to fly the route in question; and they point out that World has a valid certificate. This argument overlooks the language of § 1371(a). The certificate must authorize the transportation in question. Here the issue is whether World is permitted to engage in the challenged charter flights. If the certificate does not authorize "such transportation," § 1371(a) is violated.

Nationwide and Low say that their motions to dismiss should be sustained because neither is an "air carrier" engaged in "air transportation" as those terms are defined in the statute.[7] Section 1487(a) permits suit against "any person" for violation of the act and authorizes an injunction against "such person, his officers, agents, employees, and representatives." Although World may be the principal violator, those who participated with World may also be enjoined if the operations violated the act.[8] Northeast alleged, and the record shows, that Nationwide and Low acted as agents of World in connection with the flights in question.

We are convinced that Northeast has standing to maintain the action and that relief may be sought against all defendants-appellants. Northeast could also have proceeded before the Board. The appellants say that its failure to do so destroys the jurisdiction of the courts. Nothing in § 1487(a) requires the exhaustion of administrative remedies before the invocation of court action. The question is whether the doctrine of primary jurisdiction relegates Northeast to administrative proceedings in advance of resort to the courts.

Under the doctrine of primary jurisdiction [9] the courts will not determine a question within the jurisdiction of an administrative tribunal where the determination demands the exercise of

---

4. 179 F.2d 622, 626.

5. We shall discuss later the East Coast-Honolulu flights.

6. See 14 C.F.R. Part 302.

7. See 49 U.S.C. § 1301(3) and (10).

8. See M & R Inv. Co. v. Civil Aeronautics Board, 9 Cir., 308 F.2d 49, 51.

9. In his discerning article on "Primary Jurisdiction" Prof. Louis L. Jaffe said (77 Harv.L.Rev. 1037): "The so-called doctrine of primary jurisdiction cannot be stated in the form of a rule in terms either of its analytic structure or of its incidence. It may be seen as an attempt to resolve the procedural and substantive conflicts inevitably created when there is carved out for an agency an area of original jurisdiction which impinges on the congeries of original jurisdictions of the courts."

administrative discretion requiring the special knowledge and experience of the administrative tribunal [10] or where court action will possibly interfere with or impair the coherence and uniformity of an intricate administrative program.[11] The rule is that the doctrine of primary jurisdiction is inapplicable "where the issue, regardless of its complexity, is not the reasonableness of the rate or rule, but a violation of such rate or rule." [12] Here we do not have any question of the reasonableness of the rule defining "charter trips" [13] which is incorporated in the World certificate but instead the question of whether there has been a violation thereof.

■ The appellants say that the grants of interim authority for charter trips to supplemental air carriers are parts of a pervasive regulatory scheme implementing the economic regulations of CAB and calling for administrative expertise when construction of a certificate is sought. They urge that we have here a case "raising issues of fact not within the conventional experience of judges * * * requiring the exercise of administrative discretion." [14] We see the case in a different light. The issue is whether the contract between World and Nationwide violates the certificate of authority issued to World. The language of the certificate is clear. The definition of

"charter trips" excludes such trips when engaged by a person who is in the business of forming groups for transportation of the members thereof or in the business of soliciting or selling transportation services. The answer depends on whether the contract violates this exclusion and requires an analysis of the contract. The analysis, interpretation, construction, and application of contracts are within judicial competence and, at least in the case before us, require no administrative expertise for a solution.

No plan of regulation would be infringed by the exercise of court jurisdiction.[15] We are not concerned with the administrative process of creating a scheme of regulation. Rather we are concerned with a particular certificate of authority and a particular contract. The fact that CAB may grant exemptions from the operation of the statute is immaterial. The record does not show that the appellants have sought an exemption or that an exemption proceeding is pending before CAB. The argument that CAB might grant an exemption in a proceeding before it has no bearing on uniformity of regulation, is at best speculative, and at worst sacrifices the judicial remedies "deliberately saved" by the statute beyond what is necessary to achieve the basic purpose of the doctrine of primary jurisdiction.[16]

10. Civil Aeronautics Board v. Modern Air Transp., Inc., 2 Cir., 179 F.2d 622, 624.

11. See Slick Airways, Inc. v. American Airlines, Inc., D.C.N.J., 107 F.Supp. 199, 206, appeal dismissed American Airlines v. Forman, 204 F.2d 230, certiorari denied 346 U.S. 806, 74 S.Ct. 54, 98 L.Ed. 336.

12. Civil Aeronautics Board v. Modern Air Transp., Inc., 2 Cir., 179 F.2d 622, 624.

13. See 14 C.F.R. § 207.1.

14. See Far East Conference v. United States, 342 U.S. 570, 574, 72 S.Ct. 492, 96 L.Ed. 576.

15. This is established by the memorandum which the general counsel of CAB filed in the district court. It said in part: "In light of the findings in paragraph 3 of the Court's memorandum of December 21, 1964, the Civil Aeronautics Board believes that it would be appropriate for the Court to issue an injunction against the unlawful conduct found to have been engaged in by the defendants, in such geographic areas in which the plaintiff is determined by the Court to be a "party in interest" entitled to protection against unauthorized operation. (See Section 1007 of the Federal Aviation Act, 49 U.S.C. § 1487)." The memorandum concluded thus: "Apart from the above suggested language, the Board would consider that any decree which the Court might enter would not affect or impair the exercise of the Board's powers under the Federal Aviation Act." The court adopted the suggestions made in the memorandum.

16. Jaffe, "Primary Jurisdiction," supra at 1055.

This is not a case like Trans-Pacific Airlines v. Hawaiian Airlines, 9 Cir., 174 F.2d 63, where Hawaiian sought to enjoin Trans-Pacific from operating as a scheduled air carrier and it appeared that the Board had granted Trans-Pacific an exemption. The court held that as long as the exemption was effective Trans-Pacific was under the jurisdiction of the Board and the courts could not interfere. Here we have operation by World under a certificate rather than under an exemption.

We are convinced that the district court had jurisdiction. Other points raised by the motions to dismiss relate to the merits and do not require separate treatment.

On the merits the briefs and arguments of the parties tend to go far afield. Much is said about the solicitation of business by Nationwide through the various news media and about the basis of the per passenger charge for the charter flights. Appellants say that their activities were within the criteria established by CAB in its Docket No. 15005—Eastern Air Lines, Inc. v. Trans International Airlines, Inc.,—the so-called Shower of Stars case. Northeast denies this and points to a December 11, 1964, letter from the director of the CAB Bureau of Enforcement criticizing certain activities of World and two other holders of charter certificates. The appellants urge that these differences establish the existence of a good faith dispute over material facts which preclude the grant of a summary judgment. Consideration of these problems is unnecessary. Determination of the question of whether the World-Nationwide contract violates World's certificate is dispositive of the case. No dispute exists over the facts relating to either of these written documents. They present a question of law.

By the contract World made Nationwide its agent to sell the capability of one Boeing 707–373C aircraft configured to accommodate 180 passengers for charter operations in accordance with a schedule covering 262 flights. Nationwide agreed to deposit $50,000 with World to secure performance by Nationwide and to secure the payment of sums due for each charter trip. World agreed to pay Nationwide commissions according to a fixed table. Nationwide agreed to pay to World $116,000, as "Administrative Costs" in instalments and subject to specified credits. Nationwide could cancel 44 flights. If a required flight did not take place, Nationwide was obligated to pay fixed amounts as liquidated damages [17] subject to specified deductions bearing on mitigation of damages.

Under the certificate issued to World the term "charter trip" does not include transportation where the entire capacity of an aircraft has been engaged on a trip basis by a person, a part of whose business is the formation of groups for, or the solicitation or sale of, transportation services and where such transportation is performed under an arrangement with a person who provides or offers to provide transportation to the general public. Nationwide is a travel agency which, in addition to the ordinary activities of such an agency, promotes and arranges travel charter groups.[18] It could not have carried out its contract obligation of selling the capability of one of World's aircraft without soliciting[19] and selling transportation services. By the agreement World makes its agent for the sale and use of the charter flights an entity whose operations exclude it from the certificate definition of a permissible charterer.

This conclusion is unaffected by the provisions of the agreement that Nation-

---

17. The amounts ranged from $9,000 to $40,000. These may be compared with the charter rates which varied from $10,233 to $44,703.

18. In its brief filed in this court Nationwide says that it "is a travel agency engaged in the business of promoting and arranging travel by charter groups, in addition to the ordinary activities of a travel agency."

19. The fact of solicitation is shown by many advertisements which were made by Nationwide in East Coast newspapers and which are not questioned.

wide was to provide charters only to bona fide groups, that an authorized representative of each group was to execute the formal charter, and that each group was to pay the charter price. The difficulty is that Nationwide, a travel agency serving the public, is obligated to pay fixed amounts as liquidated damages if any required flight is not sold. Its contract with World required the solicitation and sale of air transportation. The combination of the type of business in which Nationwide engages and of its obligation to pay in any event with the necessity for soliciting and selling transportation in order to perform makes the World-Nationwide agreement violative of the World certificate.

The points raised by the appellants in regard to the grant of the preliminary injunction merit no consideration. The order granting that injunction was merged in the decree for a permanent injunction.[20] We are satisfied that the showing of irreparable damage and inadequacy of other remedies is sufficient.

■ Appellants say that the findings of the district court are insufficient to sustain the injunction. We disagree. Rule 52(a), F.R.Civ.P., permits findings to appear in an opinion or memorandum of decision. The district court's opinion sufficiently found the facts pertaining to World's certificate and to the contract between World and Nationwide. These sustain the conclusion that the contract was contrary to the terms of the certificate.

The form of the injunctive decree is bothersome. All that is necessary is to enjoin the operation and performance of the Sales Agency Agreement. The decree goes beyond this and enjoins individual features of the operation and performance of that agreement. When it

does so, difficulty is encountered because the evidence is conflicting whether some of the specifically enjoined activities occurred and because the case was disposed of on an application for summary judgment. The court should enjoin the performance and operation of the unholy alliance between World and Nationwide—not specific acts which may or may not take place thereunder. If hereafter a dispute arises with respect to such specific acts, appropriate proceedings may be brought to determine whether they violate the decree.

Apellants complain of the injunction against charter flights to Hawaii and say that as to these Northeast is not a party in interest because its authority does not include flights from the East Coast to Hawaii. When this matter was before this court on the application for relief from the preliminary injunction, the court remanded the case to the district court for further consideration of this aspect of the injunction. Northeast says that the pricing of the Hawaii flights made them competitive with Florida flights and diverted traffic from Florida. We are unable to say whether this is correct because the record contains no pertinent findings by the trial court. To uphold its position Northeast must establish, and the court must find, facts establishing the interest of Northeast in the East Coast-Hawaii flights. Otherwise, Northeast is in no position to complain.

The judgment is affirmed insofar as it enjoins the operation and performance of the Sales Agency Agreement in connection with flights from the East Coast points to Florida. The case is remanded for findings with respect to the East Coast-Hawaii flights and for such modification of the judgment as may be called for to conform to the views expressed in this opinion. Costs to appellee.

20. See Peterson v. Brotherhood of Locomotive Firemen, 7 Cir., 268 F.2d 567, 568, and cases there cited.