CIVIL AERONAUTICS BOARD,
Plaintiff,

v.

AEROMATIC TRAVEL CORP. et al.,
Defendants.

No. 71-C-1232.

United States District Court,
E. D. New York.

Nov. 24, 1971.

Robert A. Morse, U. S. Atty., E.D.N. Y., for plaintiff; Carl I. Stewart, Asst. U. S. Atty., of counsel.

Bernard Kenny, New York City, for defendants; Vincent M. McConnell, New York City, of counsel.

Boros & Lester, Washington, D. C., for defendants; Howard S. Boros, Washington, D. C., of counsel.

## DECISION

TRAVIA, District Judge.

The plaintiff, Civil Aeronautics Board ("CAB"), is seeking injunctive relief restraining the defendants, certain travel agencies and certain named individuals associated therewith, from engaging in certain business practices alleged to be violative of the Federal Aviation Program. The defendants move for various types of relief, including dismissal of the complaint.

The complaint alleges that jurisdiction is founded on 28 U.S.C. § 1345 and 49 U.S.C. § 1487. (Jurisdictional issues will be discussed *infra* in connection with the question of venue).

The defendants are alleged to be acting in violation of three aspects of the Federal Aviation Program: all of the defendants are alleged to be violating certain statutory provisions; all of the defendants are alleged to be violating certain regulations promulgated by the CAB; certain of the defendants are alleged to be violating a CAB cease and desist order.

With regard to the alleged statutory violations, it is claimed that the defendants, by virtue of their business practices, are indirect air carriers within the purview of 49 U.S.C. § 1301(3), (20), and (21) or indirect foreign air carriers within the purview of 49 U.S.C. § 1301(19) and (21); [1] and that they have acted and continue to act as such without the required certification by the plaintiff under 49 U.S.C. § 1371(a) [2] or the permit authorizing such acts under 49 U.S.C. § 1372(a). [3]

As to the regulatory violations, it is alleged that the defendants offer to sell and sell "charter" air transportation between the United States and Europe to the general public contrary to those CAB regulations governing charter air transportation, 14 C.F.R. Parts 207.11 (b) (2) *et seq.*

Finally, it claimed that certain of the defendants, Fred Meyrow and Lillian Meyrow, are acting in violation of CAB Order 71-6-117, which became effective on June 23, 1971. The Order directs a New York corporation, Charter Consultants, Inc., and Fred Meyrow, its presi-

---

1. 49 U.S.C. § 1301 reads in part:

   "(3) 'air carrier' means any citizen of the United States who undertakes, whether directly or indirectly or by lease or any other arrangement, to engage in air transportation. . . ."

   \*  \*  \*  \*  \*

   "(19) 'Foreign air carrier' means any person, not a citizen of the United States, who undertakes, whether directly or indirectly or by lease or any other arrangement, to engage in foreign air transportation."

2. 49 U.S.C. § 1371(a) reads:

   "No air carrier shall engage in any air transportation unless there is in force a certificate issued by the Board authorizing such air carrier to engage in such transportation."

3. 49 U.S.C. § 1372(a) reads:

   "No foreign air carrier shall engage in foreign air transportation unless there is in force a permit issued by the Board authorizing such carrier so to engage."

dent, to cease and desist from engaging in certain practices similar to those complained of herein.

For relief, plaintiff seeks a judgment permanently enjoining and restraining the defendants from violating the statutes, regulations, and order specified in the complaint. It also seeks judgment enjoining the defendants from failing to refund promptly to each purchaser of charter air transportation, whose contract may not be performed due to the alleged violations, the full consideration paid for such transportation. The plaintiff also seeks a preliminary injunction restraining the defendants from engaging in those practices alleged in the complaint. An evidentiary hearing on the application for a preliminary injunction has been adjourned without date pending a determination of motions made by the defendants directed to the complaint and the jurisdiction of this Court.

The defendants move to dismiss the complaint on several grounds. They maintain (1) that the case is not ripe for the exercise of this Court's jurisdiction since primary jurisdiction lies with the CAB; (2) that the complaint fails to state a cause of action; (3) that the filing of the complaint was not properly authorized by the CAB; (4) that the plaintiff has failed to join indispensable parties; and (5) that venue is not proper in the Eastern District of New York.

The question of primary jurisdiction will be discussed last since it presents the most perplexing problems to be discussed.

## I. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Defendants argue that the regulations, in the light of specific allegations in the complaint, cannot apply to the defendants. They argue, essentially, that the defendants referred to in the particular paragraphs of the complaint are not "indirect air carriers" as defined in the statutes (49 U.S.C. §§ 1301(3), 1301 (19)) and, therefore, they cannot be guilty of violations of ·49 U.S.C. §§ 1371(a), 1372(a). They argue that the term "air carrier" is not defined in the Federal Aviation Act ("Act") nor by the CAB regulations. Several of defendants additionally argue that the defendants are ticket agents within the meaning of § 1301(35), and ticket agents are not bound by the sections of the Act or the regulations specified in the complaint.

It should initially be noted that since all of the defendants in this case are alleged to be engaged in unlawful foreign charter service, the only relevant distinction between "air carriers" and "foreign air carriers" is that of the nationality of the defendant.

The definition of the term "air carrier" is a broad one including not only those persons who engage directly in air transportation but also those who so engage "by lease or any other arrangement"; that is, "indirect air carriers." The CAB maintains that the defendants operating in the manner alleged are indirect air carriers and therefore subject to the requirements of § 1371(a) and § 1372(a). They state that pursuant to the broad definition of "air carrier" in § 1301(3), the CAB has long regulated as indirect air carriers persons who do not themselves physically operate aircraft, but who, as principals or on their own behalf, hold out and sell air transportation services. They point out that it was stated in Hacienda Hotels-Motels, Rooms and Flight Reservations, Inc. and U. S. Aircoach Enforcement Proceeding, 26 CAB 372, 385 (1958), that:

> "It is the view of the Board that in general, a person not directly engaged in the operation of aircraft is an indirect carrier if such person sells transportation by aircraft to the general public other than as an authorized agent of a direct carrier in the consummation of transportation arrangements between the operator of the aircraft and the passengers."

It is also noted that in the case of Pan American World Airways, Inc. v. CAB, 129 U.S.App.D.C. 159, 392 F.2d 483 (1968), it was held that certain tour operators were foreign air carriers. As

bases for its ruling, the court stated that the tour operators arranged, operated, and conducted the tours; they determined how much each tour purchaser would pay for air transportation and connecting ground services; and aircraft and crews would be chartered by the tour operators. (It should be pointed out that the court affirmed the Board decision not to exercise jurisdiction over the foreign tour operators involved, even though such jurisdiction was within the Board, on the grounds of impracticality.)

The CAB also cites a recent case, Monarch Travel Services v. Associated Cultural Clubs, Inc., 71–1176–WPG, entered June 4, 1971 (C.D.Cal.), wherein the court entered an order for a preliminary injunction against illegal passenger consolidators who had been operating as a "club" in California. The CAB maintains that the legal basis for that order was identical to that in the instant case: defendants were found to be operating as indirect air carriers in violation of 49 U.S.C. § 1371.

The CAB also maintains that it has regulated as air carriers certain businesses which could be considered air carriers only through a broad construction of § 1301. Certain courts have concurred in such regulation. These businesses include air freight forwarders, tour operators who handle exclusive tour charters, unauthorized cooperative shippers of consolidated cargo, and travel agents and "clubs" offering air transportation as principals.

Therefore, the CAB argues on the basis of the foregoing arguments that the defendants are "indirect air carriers" and "indirect foreign air carriers" and, as such, are required by § 1371(a) and § 1372(a) to have certificates or permits issued by the CAB authorizing them to engage in air transportation. It is alleged that the certificates (or permits) have not been issued; that the defendants are not exempted from the requirements by statute; nor have they been exempted by CAB order.

The plaintiff alleges facts, which if proven, would constitute "engaging in air transportation." It is also alleged that in doing the acts complained of defendants are acting as indirect air carriers without a certificate of public convenience and necessity in violation of 49 U.S.C. § 1371(a). The question of whether defendants are indirect air carriers is the basic question in this case.

This Court feels that it must sustain the arguments of the plaintiff that the complaint sets forth allegations sufficient to state a cause of action, although such allegations are questions of fact to be proven. Therefore, the motion of the defendants to dismiss on this ground is denied.

## II. THAT THE FILING OF THE COMPLAINT WAS NOT AUTHORIZED BY THE CAB

In arguing that the filing of the complaint was not properly authorized by the CAB, the defendants rely on the case of Morgan v. United States, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288 (1936). The cited *Morgan* case was followed by a series of three *"Morgan"* cases, all of which watered down the initial holding, and, in fact, in the last of the series, the Supreme Court virtually overruled its initial ruling. *See* Morgan v. United States, 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129 (1938); United States v. Morgan, 307 U.S. 183, 59 S.Ct. 795, 83 L.Ed. 1211 (1939); United States v. Morgan, 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941). The defendants' reliance thereon is misplaced. The case now before the Court is distinguishable from the *Morgan* cases in many respects, and, in addition, in this case, the CAB has filed a copy of the Board authorization, dated September 15, 1971, by which this action was authorized.

Therefore, the motion of the defendants on this ground is denied.

### III. THAT THE CAB HAS FAILED TO JOIN INDISPENSABLE PARTIES

The defendants claim that it is not alleged that defendants held themselves out as providing air transportation or did so engage themselves; it is alleged that the defendants sold tickets of other air carriers who are not before this Court. Those air carriers, identified in the affidavits and exhibits in support of the CAB motion, include Dan Air Services Ltd., Donaldson Airways, Laker Airways, Pan American World Airways, Trans International Air Lines, and Universal Air Lines, Inc. It is argued that these airlines should be joined since they are indispensable parties under Rule 19, Fed.R.Civ.P.

The defendants argue that the CAB, in commencing this action against the defendants because of the "vast black market in air transportation", has ignored the air carriers who have in fact provided the transportation service involved. The defendants submit that these air carriers are indispensable parties in that a decree cannot be rendered by the Court which will not affect their interest and because their absence leaves the controversy in such a condition that its final determination would be wholly inconsistent with equity and good conscience.

It is also contended that these carriers are the real parties in interest subject to regulation of Part 212 of C.F.R., which is cited as one of the parts violated by the defendants. They argue that they are mere ticket agents for the air carriers and if violation of the regulations occurred, it was the air carriers who violated the regulations and not the defendants.

■ The argument of the defendants in this regard must be sustained.

The Court directs the plaintiff to bring in as parties defendants the following:

Dan Air Services Limited

Donaldson International Airways

Laker Airways

Pan American World Airways

Trans International Air Lines

Universal Airlines, Inc.

The Court further directs the plaintiff to speedily conduct whatever pretrial discovery proceeding that may be necessary so that there shall be no delay in bringing on the hearing on the application for preliminary injunction.

### IV. VENUE

Title 28 U.S.C. § 1345 and 49 U.S.C. § 1487 provide generally that civil actions commenced by federal agencies are to be brought in federal district courts and, in particular, that where the provisions of the Federal Aviation Act are being violated, the federal district courts are the proper places in which the violations are to be enjoined. Before an action brought by the CAB under § 1487 can proceed, however, there must be proper venue. Section 1487 provides that in the event of a violation, the CAB may seek proper remedies against the violators in "the district court of the United States, for any district wherein such person carries on his business or wherein the violation occurred. . . . ." The complaint alleges that the "Defendants carry on business within the Eastern District of New York and certain of the defendants' violations complained of herein, take place within the Eastern District of New York," (Plaintiff's complaint, par. 3).

■ Not all the defendants contest the venue of this action.

The defendants who press this issue state:

"No facts have been presented that Defendant carries on business within the geographical jurisdiction of the United States District Court for the Eastern District of New York, nor that any of the alleged violations took place therein. Hence, venue does not lie here. (49 U.S.C. § 1487)." (Defendants' motion to dismiss, par. 2.)

They claim that departures from John F. Kennedy International Airport

("JFK") are not violations of the Act; that the violations occurred, if indeed they did occur at all, with the "holding out for sale" and sale of transportation; that these activities did not occur in the Eastern District of New York ("E.D.N. Y."); and that the JFK departures cannot be said to amount to the defendants' carrying on business in E.D.N.Y. The sole case cited by the defendants for the proposition that the CAB has failed to establish venue in E.D.N.Y. is United States v. National City Lines, 337 U.S. 78, 69 S.Ct. 955, 93 L.Ed. 1226 (1949), *National City* involved the applicability of the doctrine of *forum non conveniens* to antitrust suits and it appears that the defendants have erroneously placed reliance on it.

A good amount of advertising is done in this District; and the whole transaction is focused on JFK with the passengers, having purchased their tickets in the Southern District of New York, being obliged to check in at JFK and depart therefrom.

Moreover, any contention that the Southern District of New York would be a more convenient forum is frivolous. There is a mere difference in two express stops on the Lexington Avenue IRT Subway Line and if any inconvenience would be brought about, it would be done by a change of venue.

This motion is obviously without merit and is denied.

## V. PRIMARY JURISDICTION

Defendants argue that the case should be dismissed because it is not ripe for the exercise of this Court's jurisdiction and because primary jurisdiction over the subject lies in the CAB itself.

It is argued that under §§ 1471 and 1472 the CAB has ample power to enforce civil and criminal penalties against those violating the Act and rules, regulations, and orders promulgated pursuant thereto; that under § 1482, the CAB has power to institute investigations, to make findings after notice of hearing that any person has failed to comply with the provisions of the Act, to make other findings relating to reasonableness of rates, to issue orders compelling compliance with the Act, to prescribe rates, and to make orders regulating air carriers and foreign air carriers; and that the § 1487 authorization to the CAB to apply to federal courts for injunctive relief against violators of the Act and CAB rules, regulations and orders must be read in harmony with the other delegations of power to the CAB under the Act or the intent of Congress in enacting the Act will be frustrated. Thus, it is contended that if the Courts determined questions within the jurisdiction of an administrative tribunal prior to the decision of the tribunal, at least in cases where the question demands the exercise of administrative discretion requiring the special knowledge and experience of the administrative tribunal, the intent of Congress would be frustrated.

It is also claimed the essential issue in the case is whether the defendants are indirect air carriers and that issue is an esoteric one especially in the light of the dearth of judicial precedent in the area. Under the circumstances, this proceeding, especially since it involves the "indirect air carrier" issue, is one peculiarly suited to resolution by the CAB with its expertise and familiarity with the business practices which might be relevant to a determination of the issue.

The doctrine of primary jurisdiction determines whether the court or the agency should make the initial decision; it applies where a claim is originally cognizable in the courts and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body. In such a case, the judicial process is suspended pending referral of such issues to the administrative agency for its views. United States v. Western Pacific

R. Co., 352 U.S. 59, 61, 64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956).[4]

Professor Davis has written extensively in his treatise concerning primary jurisdiction, 3 Davis, Administrative Law Treatise, §§ 19.01–19.09, at 1–55. He states in part:

"Possibly the best judicial statement of the doctrine is that of the Supreme Court in Far East Conference v. United States:[5] 'The Court thus applied a principle, now firmly established, that in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over.' The Court does not say that the power is withdrawn from the Court, but only that the agency should not be passed over. The Court makes this doubly clear in its next sentence: 'This is so even though the facts after they have been apprai sed by specialized competence serve as a premise for legal consequences to be judicially defined.' The final power may thus still be in the Court.[6]

\* \* \* \* \* \*

"The principal reason behind the doctrine of primary jurisdiction is not and never has been the idea that 'administrative expertise' requires a transfer of power from courts to agencies, although the idea of administrative expertise does to some extent contribute to the doctrine. The principal reason behind the doctrine is recognition of the need for orderly and sensible coordination of the work of agencies and of courts. Whether the agency happens to be expert or not, a court should not act upon subject matter that is peculiarly within the agency's specialized field without taking into account what the agency has to offer, for otherwise parties who are subject to the agency's continuous regulation may become the victims of uncoordinated and conflicting requirements.

\* \* \* \* \* \*

"The Court in Far East Conference v. United States, 342 U.S. 570, 575, 72 S.Ct. 492, 495, 96 L.Ed. 576 (1952), applied the doctrine of primary jurisdiction and said that it was 'merely applying the philosophy which was put in memorable words by Mr. Justice (as he then was) Stone: ". . . court and agency are not to be regarded as wholly independent and unrelated instrumentalities of justice each acting in the performance of its prescribed statutory duty without regard to the appropriate function of the other in securing the plainly indicated objects of the statute. Court and agency are the means adopted to attain the prescribed end, and so far as their duties are defined by the words of the statute, those words should be construed so as to attain that end through coordinated action. Neither body should repeat in this day the mistake made by the courts of law when equity was struggling for recognition as an ameliorating system of justice; neither can rightly be regarded by the other as an alien intruder, to be tolerated if must be, but never to be encouraged or aided by the other in the attainment of the common aim." United States v. Mor-

---

4. "Exhaustion [of administrative remedies] applies where a claim is cognizable in the first instance by an administrative agency *alone*; judicial interference is withheld until the administrative process has run its course." (352 U.S. at 63, 77 S.Ct. at 165). (Emphasis added). The two terms, however, are often confused and used interchangeably; such is error. See 3 Davis, Administrative Law Treatise § 19.01, at 2, n. 7.

5. 342 U.S. 570, 574, 72 S.Ct. 492, 96 L.Ed. 576 (1952).

6. Davis notes that the original proceeding before the court may be continued after the agency has acted, or the agency's action may be reviewed in a direct review proceeding. At 3, n. 8.

gan, 307 U.S. 183, 191, 59 S.Ct. 795, 799, 83 L.Ed. 1211.'

\* \* \* \* \* \*

"What has been emphasized above in this section—that the question of primary jurisdiction is whether agency or court should act first and not whether the court will refuse to act at all—is now fully confirmed by a 1958 decision of the Supreme Court that a holding that an agency had primary jurisdiction to determine the legality of practices did not imply that the agency could properly approve the practices. Instead, said the Court: 'The holding that the Board had primary jurisdiction, in short, was a device to prepare the way, if the litigation should take its ultimate course, for a more informed and precise determination by the Court of the scope and meaning of the statute as applied to those particular circumstances.'" See also Federal Maritime Bd. v. Isbrandtsen Co., 356 U.S. 481, 498, 499, 78 S.Ct. 851, 2 L.Ed.2d 926 (1958).

■ The Supreme Court has stressed two reasons for the invocation of the doctrine of primary jurisdiction: chiefly, the necessity of a desirable uniformity which would obtain if initially a specialized agency passed on certain types of administrative questions and the more desirable result which would more likely be rendered by the agency possessed of expertise and specialized powers. See United States v. Western Pacific R. Co., supra, 352 U.S. at 64, 77 S. Ct. 161.

■ Therefore, the issue with regard to primary jurisdiction and its relevance in this case is whether the enforcement of the CAB claim, although originally cognizable in this Court under § 1487, requires the resolution of issues which

under the CAB regulatory scheme have been placed within the special competence of the CAB; in other words, does this case raise issues of fact,[7] the resolution of which is not within the conventional experience of judges, but which would be more properly resolved by the CAB in the exercise of its administrative function.

One case is of essential importance CAB v. Modern Air Transport, 179 F.2d 622 (2d Cir. 1950). It is discussed by all parties to this proceeding and relied on most heavily by the plaintiff. It is also dealt with by Professor Davis in his treatise. In that case, the CAB had sought and obtained a preliminary injunction restraining the defendant from operating flights in excess of the frequency and regularity permitted by the terms of an economic regulation exempting that class of air carrier from certification. The action was commenced under the Civil Aeronautics Act of 1938 but the language contained in the relevant parts therein is identical to the statutory language involved in the case at bar. On appeal, the defendants argued that the district court should have declined jurisdiction on the basis of "primary jurisdiction." In affirming the district court, the Court of Appeals, Second Circuit stated:

"It [defendant] earnestly contends that so long as its letter of registration as an Irregular Air Carrier has not been suspended, its exemption from section 401(a) [49 U.S.C. § 1371(a)] is absolute and complete, and that the court has no jurisdiction to enjoin its unauthorized regular service until the Board has first proceeded to take action to suspend or revoke the letter of registration . . .

\* \* \* \* \* \*

7. It should be noted that primary jurisdiction is involved with questions of fact; questions designated as "law" by the Courts may be appropriately determined in the first instance by courts because uniformity may be secured through review to the single Supreme Court. The

Supreme Court could not perform its unifying function as to matters of fact because it cannot involve itself with them. See Great Northern R. Co. v. Merchants El. Co., 259 U.S. 285, 291, 42 S.Ct. 477, 66 L.Ed. 943 (1922).

Under [the doctrine of primary jurisdiction] the courts will not determine a question within the jurisdiction of an administrative tribunal prior to the decision of the tribunal where the question demands the exercise of administrative discretion requiring the special knowledge and experience of the administrative tribunal. 42 Am. Jur. 698–702. This self-denying doctrine has been used by the courts as a ground for refusing to decide the difficult issues of reasonableness of a rate or fairness of a regulation which fall within the area of special competence of the particular administrative agency and for which the agency is said to have primary jurisdiction. 51 Harv.L.Rev. 1251. But this doctrine is not applicable where the issue, regardless of its complexity, is not the reasonableness of the rate or rule, but a violation of such rate or rule.

.    .    .

\*    \*    \*    \*    \*    \*

Our present case is one involving the violation of a lawful regulation of the Board, rather than one requiring expert appraisal of the reasonableness of a company action. The Board, within the authority given it by the Act, has granted an exemption for noncertificated carriers and has set out the standards with which the carrier must comply in order to enjoy the exemption" [Part 292 of the Economic Regulations].[8]

The Court went on to review the pertinent regulatory provisions, finding that the defendant's activities had not conformed to those provisions, and that, therefore, they were operating in violation of Title 49 U.S.C. § 1371(a) and that the district court had jurisdiction to issue the preliminary injunction:

"It is of course true that the distinction set by the Supreme Court may afford difficulties in a borderline case. It is also true that even the question of violation of a regulation may be difficult, though we do not understand that there is anything in the doctrine which excuses a court from deciding a question of violation because it may be difficult. But the value of the distinction as established is shown in a case such as this where there can be no doubt of the violation and a re-reference to the Board to decide whether it was correct in seeking an injunction under the statute can be only a delaying formalism peculiarly undesirable in the application of the vital controls needed for aircraft." [9]

The court, expressly reserving the question whether the court might have jurisdiction to issue such an injunction at the suit of a private party, concluded that:

".    .    . where, as here, the Board is the petitioner seeking restraint of a violation of law, we find no judicial barrier to granting the swift remedy accorded it by Congress." [10]

In his discussion of the case, Professor Davis remarks that where the agency is the plaintiff who brings the action in enforcement pursuant to the statute, the reasons behind the doctrine of primary jurisdiction are met. 3 Davis § 19.02. When the agency is the plaintiff, the court has the advantage of knowing its position and in such circumstances that is the principal function of the doctrine of primary jurisdiction. (3 Davis, § 19.02, n. 41). Therefore, it would seem that (1) there would be no chance of confusing holdings between the Board and the courts because the courts are put on notice of the Board's attitude toward an issue, and (2) the reasons favoring an agency determination based on agency expertise are mitigated where the agency by commencing the action is virtually admitting that the court's expertise in resolving the question is equal to if not greater than its own.

8. 179 F.2d 622, 624, 625; See also generally Louis L. Jaffe, Primary Jurisdiction, 77 Harv.L.Rev. 1037 (1964).

9. 179 F.2d 622, 625.

10. 179 F.2d 622, 626.

The cases relied on by the plaintiff are also cited by the defendants to support their position. The defendants claim that the *Modern Air Transport* case, *supra,* involved undisputed facts; the court was presented with a clear and admitted violation of a CAB statute, and the defendant raised only jurisdictional arguments. There was no necessity for the resolution of complex issues by a specialized agency. The Court stated:

". . . there can be no doubt of the violation and a re-reference to the Board to decide whether it was correct in seeking an injunction under the statute can be only a delaying formalism peculiarly undesirable in the application of the vital controls needed for aircraft." (179 F.2d at 625–626.)

Defendants also maintain that the case of World Airways, Inc. v. Northeast Airlines, Inc., 349 F.2d 1007 (1st Cir. 1965), which was cited by the plaintiff, is also distinguishable. In deciding that the issues before it were of a legal nature and that referral of the case to the CAB would not be proper, the court stated:

"The issue is whether the contract between World and Nationwide violates the certificate of authority issued to World. The language of the certificate is clear. . . . The answer depends on whether the contract violates this exclusion and requires an analysis of the contract. *The analysis, interpretation, construction, and application of contracts are within judicial competence and, at least in the case before us, require no administrative expertise for a solution.*" (349 F.2d at 1011.) (Emphasis added.)

Moreover, it is argued that the Davis analysis is not valid in this case. It is Professor Davis' position that where the agency itself is plaintiff there need be no prior resort to the agency for its determination because the court is placed on notice of the agency's position. Such is not the case herein. Although the CAB brings this action, it cannot be said that the Board's authorization to the Director of the CAB Bureau of En-

forcement to commence this action is indicative of the Board's position on the difficult issues presented. The defendants state that the Board has presently pending before it a great many cases presenting issues virtually identical to those herein and they have been before the Board for well over a year without decision; over the course of the last eight and one-half years, the CAB has been conducting its "Investigation of the Tariff and Fare Activities and Practices on North Atlantic Routes"; and masses of material have been gathered by the Board in the course of its investigation.

The defendants lay great stress on the case of Pan American World Airways v. United States, 371 U.S. 296, 83 S.Ct. 476, 9 L.Ed.2d 325 (1963). That case involved a civil antitrust suit brought by the Attorney General against Pan American and W. R. Grace & Co. charging violations by air carriers of Sections 1, 2 and 3 of the Sherman Act, 15 U.S.C. §§ 1, 2, 3. The Supreme Court determined that the suit initiated in a federal district court had to be dismissed since the issues involved the case had been entrusted to the CAB. The Court held that the question of whether the transactions in question met the standards of competition and monopoly provided in the Civil Aeronautics Act was peculiarly suited to the CAB's determination. It was stated that Section 411 of the Act leaves with the CAB

". . . all questions of injunctive relief against the division of territories or the allocation of routes or against combinations between common carriers and air carriers. . . ." (371 U.S. at 310, 83 S.Ct. at 485.)

Although not formally designated as plaintiff in the case, the CAB's position was absolutely clear; in fact it was the CAB which specifically requested the Attorney General to commence the action.

Therefore, the defendants allege that the contentions of the CAB that it had made clear its position on the relevant

factual issues by commencing this action, that referral of those issues to the CAB would be useless, and that this Court is bound to make all factual and legal determinations, also must fail.

██ With regard to the statutory violations, it is alleged:

". . . defendants are indirect 'air carriers' within the purview of 49 U. S.C. § 1301(3) (20) and (21), or indirect 'foreign air carriers' within the purview of 49 U.S.C. § 1301(19) and (21). . . ."

It is further alleged that, as "indirect air carriers" or "indirect foreign air carriers," the defendants are acting in violation of 49 U.S.C. § 1371(a) in that they have not obtained the required certification by the CAB or are in violation of 49 U.S.C. § 1372(a) in that they have not obtained the requisite permit from the CAB. The issue of whether the necessary certifications or permits were obtained by the defendants presents no problem for this Court; the remaining issue of whether the activities engaged in by the defendants as alleged in the complaint constitute them as "indirect air carriers", while a more delicate one, does not require particular expertise solely within the competence of the CAB. Certainly the Court does not envision any problem on this point in the case. An evidentiary hearing on the plaintiff's application for a temporary injunction may prove otherwise.

The CAB notes that it has issued a number of cease and desist orders against parties alleged to be carrying on operations similar to those of the defendants herein. It is argued that these orders provide the Court with an adequate basis for ascertaining the CAB's position with regard to the activities herein and that this Court should apply that construction of "indirect air carrier" to the defendants.

The CAB also relies on the recently decided case of Monarch Travel Services, Inc. v. Associated Cultural Clubs, 71–1176–WPG, entered June 4, 1971 (C. D.Cal.). It is contended that the case is of important precedential value because it involved activities identical to those herein. The order of the court in that case, issued without written opinion, granted preliminary injunctive relief.

This Court is not completely convinced by the reasoning of the defendants. This Court is of the opinion that the *Pan American World Airways, Inc.*, case, *supra*, can be distinguished from the case at bar as can the cases cited by the plaintiff. The Court feels that during the evidentiary hearing to be held on the plaintiff's motion for a temporary injunction other facts and circumstances will come to light that may make this Court's determination on the issue of primary jurisdiction easier.

Therefore, the motion of the defendants in this regard is denied with leave to renew at an appropriate time during the said hearing.

Other applications were made by the defendants as a part of their motions. These applications, if pursued, can be disposed of at the evidentiary hearing.

Submit orders in accordance with this decision with notice of settlement to be served on the opponents.