**CIVIL AERONAUTICS BOARD,**
Plaintiff,

v.

**AEROMATIC TRAVEL CORP. et al.,**
Defendants.

No. 71–C–1232.

United States District Court.
E. D. New York.

Oct. 25, 1972.

See also, D.C., 341 F.Supp. 1271.

Robert A. Morse, U. S. Atty., Eastern District of New York, Brooklyn, N. Y., for plaintiff; Carl I. Stewart, Asst. U. S. Atty., of counsel.

Bernard Kenny, New York City, for defendants; Vincent M. McConnell, New York City, of counsel.

Boros & Lester, Washington, D. C., for defendants; Howard S. Boros, Washington, D. C., of counsel.

Hofheimer, Gartlir, Gottlieb & Gross, New York City, for defendants.*

## DECISION AND ORDER

TRAVIA, District Judge.

The plaintiff, Civil Aeronautics Board [hereinafter CAB], instituted this action to enjoin and restrain the defendants, certain travel agencies and certain named individuals associated therewith, from engaging in specific activities as "indirect air carriers and indirect foreign air carriers." See Title 49 U.S.C. § 1301(3), (19).[1] In addition, the CAB requested the enforcement of a cease and desist order, issued by the CAB on June 23, 1971. That order, docket numbers 22307 and 22311, was issued against Charter Consultants, Inc., and Fred Meyrow, individually, and directed that they refrain from engaging in air transportation as indirect air carriers.[2]

The CAB alleges that the defendants, while acting as indirect air carriers, are violating certain rules and regulations of the CAB, made pursuant to the Federal Aviation Act and, more particularly, that the defendants' activities are in violation of Title 49 U.S.C. §§ 1371(a) and 1372(a). These sections provide that all air carriers, direct or indirect, domestic (1371) or foreign (1372), must secure a certificate or permit of authorization from the CAB to engage in such activities.[3]

---

* Originally, the defendants, Consolidated Air Brokers, Inc., Fred Meyrow and Lillian Meyrow, were represented by Mr. Boros. However, he was later substituted by the firm of Hofheimer, Gartlir, Gottlieb & Gross, Esqs.

1. Section 1301(3) defines an air carrier as follows:

"'Air carrier' means any citizen of the United States who undertakes, *whether directly or indirectly* or by a lease or any other arrangement, *to engage in air transportation*. . . ."

Section 1301(19) defines foreign air carrier as follows:

"'Foreign air carrier' means any person, not a citizen of the United States, who undertakes, *whether directly or in-*

*directly* or by lease or any other arrangement, *to engage in foreign air transportation*." (Emphasis added.)

2. A copy of the cease and desist order is attached to the civil complaint filed in this action by the CAB.

3. Section 1371(a) provides:

"No *air carrier* shall engage in any air transportation unless there is in force a certificate issued by the Board authorizing such air carrier to engage in such transportation."

Section 1372(a) provides:

"No *foreign air carrier* shall engage in foreign air transportation unless there is in force a permit issued by the Board authorizing such carrier so to engage." (Emphasis added.)

The defendants do not contest the validity of sections 1371 or 1372, nor do they allege that they have complied with the statutory mandates by securing a certificate or permit. They contend that the statutory mandates are not applicable to them because they are not acting as direct or indirect air carriers but merely as ticket agents as defined in Section 1301(35) of Title 49 U.S.C.[4] The defendants also contend that the CAB has not, as to each of them, ruled that their activities would make them indirect air carriers as defined in Sections 1301(3) and 1301(19). They, therefore, request that the court, at this time, exercise its discretion under the doctrine of primary jurisdiction and refer the question of their status within the industry to the CAB for an administrative determination. The defendants urge the necessity of an administrative ruling in the first instance because the agency is better equipped to evaluate the defendants' status within the aviation industry. To fortify their argument on primary jurisdiction, the defendants point out that other members of the industry are presently awaiting the CAB's ruling on the exact question of status presented in this case, and that the CAB has made rulings which affect this proceeding.[5]

■ A determination of the defendants' status within the aviation industry is the basic question in this proceeding. Clearly, such an issue presents a question of fact. The defendant can only be held liable for the violations alleged if they are in fact found to be operating as indirect air carriers, as defined in Section 1301(3) of Title 49,

U.S.C. The court will, therefore, for the purpose of the defendants' renewed motion to dismiss, only consider the question of whether this court should apply the doctrine of primary jurisdiction, and thereby refer the issue of the defendants' status to the CAB for their administrative ruling.

Before discussing the concept of primary jurisdiction, the court will give a brief chronological summary of the case at bar so as to "set the stage" and, thus, enable the reader to better understand the position now to be taken by this court on the motion before it.

The original complaint was filed on September 17, 1971. On October 6, 1971 an order to show cause was signed, at the plaintiff's request, which order sought the issuance of a temporary injunction directed against the defendants named. On October 29, 1971, the plaintiff moved for an order to add additional defendants, which was granted. Thereafter, the defendants moved to dismiss the complaint on various grounds, including the theory of primary jurisdiction. Decision was reserved after oral argument on November 5, 1971.

On November 24, 1971 this court issued its decision concerning the several motions made by the defendants, D.C., 341 F.Supp. 1271. In that decision the defendants' motions were "denied with leave to renew at an appropriate time. . . ." Further, the court stated:

"[T]hat during the evidentiary hearing to be held on the plaintiff's motion for a temporary injunction other facts and circumstances will come to light that may make this Court's determination on the issue of

4. Section 1301(35) defines ticket agent as follows:

" 'Ticket agent' means any person, *not an air carrier or a foreign air carrier* and not a bona fide employee of an air carrier or foreign air carrier, who, as principal or agent, sells or offers for sale any air transportation, or negotiates for, or holds himself out by solicitation, advertisement, or otherwise as one who sells, provides, fur-

nishes, contracts or arranges for, such transportation." (Emphasis added.)

5. *See* CAB Order 72–8–89, Docket No. 24687 (August 21, 1972); 41 U.S.L.W. at 2172 (October 3, 1972). In addition, the defendant, Aeromatic Travel Corporation, has included in its memorandum in support of their original motion to dismiss a complete list of the similar cases now pending before the CAB. *See* defendants' memorandum, at 14.

primary jurisdiction easier." Decision of November 24, 1971, at 1282.

Thereafter, several defendants to the action moved to add party defendants, alleged to be indispensable. Those motions were granted and an order was made directing the plaintiff to amend the complaint and add nine defendants, alleged to be indispensable parties. The plaintiff followed the order of the court as it decided to interpret the said order. It merely amended the caption of the case by adding the additional defendants and then, as if to scorn the real meaning of the order, in allegation after allegation excluded the additional defendants from any blame or wrongdoing. As a result, the court was compelled to grant the motions of the additional defendants to dismiss the amended complaint as against them. The court, on the argument of said motions, directed the original defendants to renew their motions on the issue of primary jurisdiction, considering this to be an appropriate time.

As a result of the aforementioned dilatory maneuvering, this case is now at the stage that existed in November 1971. This court will now reconsider the renewed motions of the original defendants to dismiss this complaint on the theory that the court should apply the doctrine of primary jurisdiction and refer the matter to the CAB for its administrative decision.

## PRIMARY JURISDICTION

■■ The doctrine of primary jurisdiction is concerned with promoting proper relationships between the courts and administrative agencies. The doctrine has been invoked to forestall the Federal courts from trying a case which involves issues placed within the special competence of an administrative body. This doctrine is not to be confused with the doctrine of exhaustion of administrative remedies; both are separate and distinct principals of law.[6]

■■ The rationale behind the doctrine of primary jurisdiction is set forth with particular clarity in United States v. Western Pacific Railroad Co.[7] That case involved an action for money damages allegedly due from the United States to the Railroad for the shipping of aerial bomb cases filled with napalm gel. The issue presented was whether the Government should have paid higher first-class rates or the lower fifth-class rate. The United States defended by arguing that such a question should be considered and determined by the administrative agency commissioned to regulate that particular industry. Mr. Justice Harlan, in his majority opinion holding that the question should be determined by the I.C.C., stated in part:

"No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation. . . . More recently the expert and specialized knowledge of the agencies involved has been particularly stressed."

United States v. Western Pacific Railroad Co., 352 U.S. 59, at 64, 77 S.Ct. 161, at 165 (1956); see also Far East Conference v. United States, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952). In effect, the doctrine of primary jurisdiction will determine whether the court or the administrative body should make the initial determination. The doctrine does not necessarily allocate power between the courts and various agencies, for it only determines who shall first consider the issue, and not who shall finally consider such issue.[8] Therefore, a

6. *See* United States v. Western Pacific Railroad Co., infra, at 63–64, 77 S.Ct. at 165 (1956) ; *see also* 3 K. Davis, Administrative Law Treatise, § 19.01 at 2 (1958).

7. 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956).

8. 3 K. Davis, Administrative Law Treatise, § 19.01, at 3 (1958).

determination by a court that an agency has primary jurisdiction over a particular question does not necessarily mean that the court will refrain from deciding the case before it; it may mean that the court has, in its discretion, chosen to postpone its decision until after the administrative body has ruled on the certified issue.[9]

## DEFENDANTS' MOTION TO DISMISS

On July 20, 1972, following oral argument held on June 30, 1972, several of the defendants, at the court's suggestion, renewed their motions to dismiss this case claiming that the court should apply the doctrine of primary jurisdiction. Likewise, the plaintiff renewed its position in opposition to such a dismissal.

The arguments set forth by the defendants in their renewed motion are, in essence, identical to those asserted in their original motion. The backbone of their argument is that the defendants' liability in this case will only exist if it is found that their activities are those of an indirect air carrier. In short, a determination of the defendants' status within the aviation industry will establish or negate their liability. Thus, the defendants argue, "where industry practice is a significant consideration in pigeonholing the type of activity under consideration, the administrative tribunal should, in the first instance, make findings of fact on that practice." [10]

The plaintiff begins its second memorandum in opposition to this motion by alleging that the court may not now grant this renewed motion to dismiss because the prior motion was denied pending an evidentiary hearing, which hearing has not yet been held.[11] This contention, designed to limit the court's discretionary power, is not supported in law or reason. A court's power to defer an issue or case under the primary jurisdiction doctrine is purely discretionary and can be invoked at any stage.[12] There is no hard and fast rule which must be satisfied before the doctrine can be employed. The very nature of the doctrine lends itself to a situation whereby the courts may, at any time, with or without an evidentiary hearing, consider the appropriateness of its application.[13] Although the prior motion was denied, the court specifically stated that it would consider a renewal of that motion at an appropriate time in the future.[14] This opportunity to renew was not contingent entirely on the findings of an evidentiary hearing. To now require this court to conduct such a hearing before it can exercise its discretion and apply the doctrine of primary jurisdiction would alone seriously limit the powers of the court. Further, such a requirement would necessarily delay a final determination of the case and

9. 3 K. Davis, Administrative Law Treatise, *supra.*

10. Memorandum in support of the defendants' motion to dismiss (for defendant, Ira Karp, filed July 20, 1972).

11. Plaintiff's memorandum, at 2 (filed August 11, 1972).

12. United States v. Western Pacific Railroad Co., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956).

13. *See* United States v. Western Pacific Railroad Co., 352 U.S. at 64, 77 S.Ct. at 165 (1956); Far East Conference v. United States, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952).

14. The opportunity to renew the motion was granted by the court because, at that time, the court was not completely convinced by the arguments made. In fact, the court noted:

"[That] this Court is not completely convinced by the reasoning of the defendants. This Court is of the opinion that the Pan American World Airways, Inc., [v. United States, 371 U.S. 296, 83 S.Ct. 476, 9 L.Ed.2d 325], case, supra, can be distinguished from the case at bar as can the cases cited by the plaintiff." Court's Decision of November 24, 1971, at 1282.

thereby burden all of the parties needlessly.[15]

Following their initial argument the plaintiff, CAB, then asserts the proposition that this court should not grant the defendants renewed motion to dismiss because there is no question in this case involving the special expertise of an administrative body and the request for an application of the doctrine of primary jurisdiction is unfounded. In support of this latter, more substantial claim, the plaintiff relies on the holding in CAB v. Modern Air Transport, Inc., 179 F.2d 622 (2d Cir. 1950). In that case the United States Court of Appeals, Second Circuit, affirmed the district court's decision and refused to apply the doctrine of primary jurisdiction where the issue was concerning the violation of a rule rather than the reasonableness of the rule. Judge Clark, in his opinion, stated:

"[T]his doctrine [primary jurisdiction] is not applicable where the issue, regardless of its complexity, is not the reasonableness of the rate or rule, but a violation of such rate or rule. . . ."

CAB v. Modern Air Transport, Inc., *id.* at 624.

This court does not take issue with the rule of law so clearly presented in *Modern Air*. It does, however, feel that the circumstances and issues of the pending case are quite different from the circumstances that existed in *Modern Air*. In *Modern Air* there was no question as to the defendant's status within the industry. In fact, the defendant there admitted to being an air carrier engaged in air transportation on an irregular basis.[16] It was, therefore, clear that the defendant was subject to certain rules and regulations pertaining to air carriers. In the instant case, the defendants do not admit to being a particular type of air carrier engaged in air transportation, rather, they allege only to sell such transportation as mere ticket agents.

The real question in *Modern Air* was whether the defendant, an admitted air carrier, was operating on a regular basis.[17] The court found that the CAB had already set forth clearly and precisely the standards necessary to determine such an issue of frequency.[18] In short, the court in *Modern Air (supra)*, needed only to apply the specific rules and regulations to a known and admitted violator of such rules and regulations. In contrast, this court does not enjoy the benefit of such certainty as to whether the defendants are indeed indirect air carriers, nor is this court blessed with the advantage of having clear standards and criteria by which it could be guided in determining such a question as to the defendants' status.

Although there are several other cases on the subject of air carriers, those cases do not offer sufficient assistance. In all of the cases considered, the facts and relationships of the parties do not sufficiently complement or parallel the factual situation at bar.[19] The court, at

---

15. As the chronological summary of this case illustrates, the defendants have already been burdened needlessly by the issuance of an alleged amended complaint which had to be dismissed for failure to state a cause of action. Any further dilatory procedures should not be permitted.

16. CAB v. Modern Air Transport, Inc., *id.* at 624.

17. CAB v. Modern Air Transport, Inc., *id.* at 624.

18. *Id.* at 625.

19. Pan American World Airways v. United States, 371 U.S. 296, 83 S.Ct. 476, 9 L.Ed.2d 325 (1963); Pan American World Airways, Inc. v. CAB, 129 U.S. App.D.C. 159, 392 F.2d 483 (1968); World Airways, Inc. v. Northeast Airlines, Inc., 349 F.2d 1007 (1st Cir. 1965); Monarch Travel Services, Inc. v. Associated Cultural Clubs, Civil Action No. 71–1176–WPG (June 4, 1971) (C.D. Cal.).

this stage in the case at bar, is now of the opinion that any substantial reliance on those cases to determine the issue presented here would be misplaced and misleading.

In addition to the lack of clear statutory language or case law defining the term "indirect air carrier", the question presented in this motion is further complicated by the actions of the CAB itself. The defendants in this case have pointed out to the court that while this suit has been pending, several members of the aviation industry are awaiting an administrative decision on the very question of status raised by this motion of status raised by this motion.[20] The existence of such a situation, in the court's opinion, seems to give greater weight to the defendants' argument that the doctrine of primary jurisdiction should be applied. Clearly, its application would prevent the possibility of conflicting decisions.

As a result of the foregoing, the court is now of the opinion that any ruling as to the differences between an indirect air carrier and a ticket agent can best be made, in the first instance, by the administrative body charged with regulating the industry. There is no doubt that the Civil Aeronautics Board would be better equipped to characterize and define the subtle differences between the two roles.

Accordingly, the court exercises its discretion to apply the doctrine of primary jurisdiction, and hereby refers the issue of the defendants' status to the CAB. In doing so, however, the court does not relinquish its jurisdiction over this case and stays the final determination until after the agency's decision.

Submit an order with notice of settlement in accordance with this decision.

---

20. In addition to the fact that several similar cases are pending before the Board certain other developments, initiated by the Board, may bear on the issues at bar. On August 21, 1972 the CAB issued an order instituting an investigation of the passenger fare discounting practices in the North Atlantic market. Further, the October 3, 1972 issue of *The United States Law Week*, at 2172 refers to a "new regulation" affecting the operation and practices of the charter tour business.