113 So.2d 884 (1959)
NORTHEAST AIRLINES, INC., Appellant,
v.
Walter WEISS, as Chairman, and Charles F. Hall, Ralph A. Fossey, Edwin L. Mason, John B. McLeod, Faris N. Cowart, Robert M. Haverfield, Ben McGahey, Joseph A. Boyd, Jr., Alexander S. Gordon and Arthur H. Patten, as members of the Dade County Commission Acting as the Dade County Port Authority, Appellees.
No. 59-110.
District Court of Appeal of Florida. Third District.
July 2, 1959.
Rehearing Denied August 19, 1959.
Walton, Lantaff, Schroeder, Atkins, Carson & Wahl, Miami, for appellant.
James F. Eckhart and Clifford J. Schott, Miami, for Dade County Port Authority, appellee.
*885 CARROLL, CHAS, Judge.
This is an appeal from an interlocutory order entered by the circuit court in Dade County on defendants' motion to dismiss an amended complaint for declaratory decree, injunction and damages.
Appellant, the plaintiff below, is a common carrier (by air) engaged in interstate commerce, and using the airport facilities of the Dade County Port Authority. It sued the Port Authority, alleging that body had charged it rates and fees which were unjust and discriminatory by being greater  in some instances more than six times greater  than the charges made by the Port Authority for items and services to certain of its competitors using like facilities. A decree was sought determining that such charges were unjust and discriminatory, enjoining the continuance thereof by the Port Authority, and granting a refund to the plaintiff of the difference between the charges it had heretofore paid, and that amount that would have been paid if measured by the rates charged plaintiff's competitors.
The pertinent allegations set out in the amended complaint were these:
"4. Approximately 85% of the Miami International Airport, as well as many of the improvements thereon, was acquired by the Port Authority from time to time under various acts of Congress and the regulations adopted in furtherance thereof which require the Authority to operate the Airport without discrimination between users of the same class. Said acts and regulations, while authorizing the imposition of reasonable charges for the use of the services and facilities of the Airport, provide that such charges must be fair, equal and non-discriminatory.
"5. * * * In or about February 1957 the plaintiff protested that the Port Authority was requiring it to pay and collecting from it rates and charges which were substantially greater than rates and charges being collected by the Port Authority from its competitors, National Airlines and Eastern Air Lines. From January 1957 through August 1958 plaintiff paid under protest the landing fees and charges assessed against it by the Port Authority; but although plaintiff has voiced its protest and appealed to the Port Authority on numerous occasions to eliminate the discriminatory charges and taxes, no relief has been granted. Further protest to the defendants would be vain and useless.
"6. From January 1957 through August 1958 the plaintiff has been required to pay and the Port Authority has collected from it over its protest landing fees and passenger taxes aggregating $136,037.90. The discriminatory rates and charges imposed upon plaintiff are levied pursuant to Resolution No. 56 of the Port Authority which was adopted in September 1946. Prior to its adoption the Port Authority had entered into lease agreements with National Airlines and Eastern Air Lines providing for the payment of rates and charges which for utilizing the same facilities with the same number of landings and passengers would produce the sum of approximately $20,139.75. As a result thereof, the rates and charges imposed upon plaintiff for the use of the services and facilities of Miami International Airport from January 1, 1957 through August 1958 were 675% greater than the charges that would have been assessed against its competitors for use of the same services and facilities.
"7. The unconscionable discrimination between plaintiff and its competitors places the plaintiff at an obvious competitive disadvantage and such discrimination is violative of plaintiff's rights under Section 1 of the Declaration of Rights in the Florida Constitution [F.S.A.] and the Fourteenth *886 Amendment of the Constitution of the United States in that such shockingly different rates and charges bear no semblance to equality and uniformity. Said rates and charges are further violative of Article 16, Section 30 of the Florida Constitution [F.S.A.] because they are excessive and unjustly discriminate against plaintiff, and are further violative of Section 8 of Article 1 of the Constitution of the United States because they are not reasonable and uniform and are so excessive as to constitute a burden on interstate commerce.
"8. Northeast Airlines is placed at a further competitive disadvantage at the Miami International Airport by reason of the fact that the company from which it purchases aviation gasoline is required to pay to the Dade County Port Authority five per cent of its gross sales of aviation gasoline, thus resulting in an increased price of one-half cent per gallon to plaintiff. The companies supplying the aforementioned competitors of Northeast are not required to pay said five per cent tax. As a result of such discriminatory and unequal treatment plaintiff during the period January 1957 through August 1958 has been required to pay $30,682.18 more for its aviation fuel at the Miami International Airport than its competitors Eastern and National would have been required to pay had they purchased the same number of gallons from the same distributor supplying plaintiff.
"9. The exaction from plaintiff by defendants of such unequal, discriminatory, unreasonable, unjust and unfair charges, fees and taxes has imposed and will continue to impose on plaintiff an unjust and discriminatory financial burden and loss, and plaintiff has no adequate remedy at law to recover the discriminatory and illegal taxes, fees and charges which it is required to pay each month to the defendants save by a multiplicity of actions."
The chancellor held that the suit was presented prematurely, on the theory that there were administrative remedies prescribed and available which plaintiff must exhaust before resorting to equity. The chancellor's order "requested" the plaintiff to "file its complaint before the appropriate administrative body, namely, the Civil Aeronautics Administration within thirty (30) days from the date hereof," and ruled that in default thereof, "this cause will, upon motion of the defendant showing such fact, after notice to the plaintiff, be dismissed," and the chancellor expressly reserved and continued jurisdiction.
The statutory provisions involved are these:
The Federal Airport Act of 1946, dealing with federal aid in public airport development, by a section now codified as 49 U.S.C.A. § 1110, made provision against such airports imposing unfair, unjust or discriminatory terms upon the users thereof, as follows:
"As a condition precedent to his approval of a project under this chapter, the Administrator shall receive assurances in writing, satisfactory to him, that 
"(1) the airport to which the project relates will be available for public use on fair and reasonable terms and without unjust discrimination;
* * * * * *
"To insure compliance with this section, the Administrator shall prescribe such project sponsorship requirements, consistent with the terms of this chapter, as he may deem necessary. Among other steps to insure such compliance the Administrator is authorized to enter into contracts with public agencies, on behalf of the United States."
The Federal Aviation Act of 1958, by § 1002(a), now codified as 49 U.S.C.A. § *887 1482(a), sets forth a general provision for complaints to be made to the "Administrator or the Board" for any act claimed to have been done or omitted by any person in contravention of the provisions of the Act and relating to a matter within the jurisdiction of the Board, as follows:
"Any person may file with the Administrator or the Board as to matters within their respective jurisdictions, a complaint in writing with respect to anything done or omitted to be done by any person in contravention of any provisions of this chapter, or of any requirement established pursuant thereto. If the person complained against shall not satisfy the complaint and there shall appear to be any reasonable ground for investigating the complaint, it shall be the duty of the Administrator or the Board to investigate the matters complained of. Whenever the Administrator or the Board, is of the opinion that any complaint does not state facts which warrant an investigation or action, such complaint may be dismissed without hearing. * * *"
We have been referred to no statutory remedy to complement such a complaint if asserted. Counsel for appellees argued that certain contracts had been entered into between the government and operators of this and other airports, which they say contain clauses under which, in event of such discrimination, the government could retake from the operators of such airports all monies which the government had furnished them for the improvement thereof. Such contract or contracts if they exist, are not within the pleadings and were not properly before the court on the motion to dismiss. Counsel for appellant stated in argument that appellant had no desire to invoke that drastic sanction against the Port Authority by the government. Imposition thereof, if it should occur, would not aid or remedy the complaint of the appellant for past discrimination and monetary loss.
We hold that the equity court had jurisdiction of the cause, and that it was not to be deprived thereof either because of the doctrine of exhaustion of administrative remedies, or the doctrine of primary jurisdiction. See Parker v. Lester, 9 Cir., 1955, 227 F.2d 708; Fitzgerald v. Pan American World Airways, 2 Cir., 1956, 229 F.2d 499; New York, Susquehanna & Western R. Co. v. Follmer, 3 Cir., 1958, 254 F.2d 510.
These doctrines of exhaustion of administrative remedies and primary jurisdiction as applied to such a federal board, were explained in United States v. Western P.R. Co., 352 U.S. 59, 63-64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126, 132, as follows:
"The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties.
"`Exhaustion' applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. `Primary jurisdiction,' on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views. General American Tank Car Corp. v. El Dorado Terminal Co., 308 U.S. 422, 433, 60 S.Ct. 325, 331, 84 L.Ed. 361, [370]."
Thus, the doctrine of exhaustion of administrative remedies has no force with reference to the cause of action asserted in the amended complaint, under the statutes *888 referred to. Processing the instant complaint before the Board could not yield any full or adequate relief to the plaintiff; and the agency in question is not empowered or able to grant to plaintiff the remedies to which plaintiff would be entitled if it should there prevail. United States Alkali Export Ass'n v. United States, 325 U.S. 196, 65 S.Ct. 1120, 89 L.Ed. 1554; Davis, Administrative Law Treatise, § 20.07 (1958); 42 Am.Jur., Public Administrative Law, § 200. Cf. Laughlin v. Riddle Aviation Co., 5 Cir., 1953, 205 F.2d 948.
Turning now to the alternative ground urged by appellees as a justification for depriving the equity court of jurisdiction, that is, the doctrine of primary jurisdiction, while it is true that the absence of a remedy is not fatal to that doctrine, resort to it is required only where there is need to obtain uniformity or the benefit of experts in a field of complicated factual situations and intricacies generally regarded as being beyond the capacity of a court to grasp and determine. This was expressed more fully in United States v. Western P.R. Co., supra, 352 U.S. at page 64, 77 S.Ct. at page 165, 1 L.Ed.2d at page 132, where the court said:
"No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation. These reasons and purposes have often been given expression by this Court. In the earlier cases emphasis was laid on the desirable uniformity which would obtain if initially a specialized agency passed on certain types of administrative questions. See Texas & Pacific R. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553, [9 Ann.Cas. 1075]. More recently the expert and specialized knowledge of the agencies involved has been particularly stressed. See Far East Conference v. United States, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576. The two factors are part of the same principle, `now firmly established, that in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined. Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure.' Id., 342 U.S. at pages 574, 575, 72 S.Ct. at page 494."
When we look at the questions based on the facts alleged which would be presented to the Board in the instant case, it is clear that neither the principle of uniformity nor of expertise require prior resort to the Board. The matter of uniformity is already decided by the statute. A clear statutory policy against unfair, unjust and discriminatory treatment between the users of such airports was declared. The Board could not give an opinion contrary to the command of the statute.
The facts upon which the claim of unfair treatment and discrimination was based were simple  that more was charged to plaintiff than was charged to others for the same services. On those plain facts the doctrine of primary jurisdiction was not applicable. Reynolds v. United States, 292 U.S. 443, 54 S.Ct. 800, 78 L.Ed. 1353. See, also, Convisser, Primary Jurisdiction; The Rule and its Rationalizations, 65 Yale *889 L.J. 315 (1956). In so holding, we follow the decision of the United States Court of Appeals for the second Circuit, in the case of Fitzgerald v. Pan American World Airways, supra, 229 F.2d 499. In that case certain passengers sued Pan American World Airways for damages, alleging that they were discriminated against as to seating because of their race and color in violation of a provision of the Civil Aeronautics Act which prohibited such discrimination by air carriers. The District Court dismissed the cause for want of jurisdiction. The Court of Appeals reversed, holding that the District Court had jurisdiction to determine the cause, and that the doctrine of exhaustion of remedies was not applicable because of the absence of a remedy in the Board, although the law authorized the making of a complaint to the Board.[1] Also, the court held in that case that the doctrine of primary jurisdiction did not apply, because reparation in money could not be provided by the Board and because the Board had no power to approve a violation of provisions of the statute against discrimination. In that connection the court said (229 F.2d at page 502):
"Defendant also contends that the sole non-criminal federal remedy for a violation of any provisions of the Act is to be found in Section 642, i.e., a complaint to the Civil Aeronautics Board which must investigate the complaint and, if the facts warrant, must issue an order compelling compliance with the violated provisions of the Act. We cannot agree. As such an order must look to the future, obviously it cannot afford redress to one harmed by a violation of Section 484(b). * * * At any rate, no order of the Board can compel the defendant in 1956 to permit the plaintiffs to board defendant's plane on July 19, 1954.
"This is not a case where the Board has `exclusive primary jurisdiction': (1) The Civil Aeronautics Act, unlike the Interstate Commerce Act or the Shipping Act, confers no power on the administrative agency to grant reparation in money for past misconduct of the carrier. (2) The Board has no power to approve violations of Section 484(b). (3) Nor has it purported to do so."
For the reasons stated the order appealed from is reversed and the case remanded for further proceedings.
Reversed.
HORTON, C.J., and PEARSON, J., concur.
NOTES
[1] The statutory authority for making complaint to the Board in that instance was 49 U.S.C.A. § 642, substantially the same provision as present 49 U.S.C.A. § 1482, which is quoted hereinabove.