118 N.J. Super. 184 (1972)
287 A.2d 4
TRAVEL AGENTS MALPRACTICE ACTION CORPS, PLAINTIFF-APPELLANT,
v.
REGAL CULTURAL SOCIETY, INC., and REGAL TOURS, INC., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 12, 1971.
Decided February 1, 1972.
*187 Before Judges CONFORD, MATTHEWS and FRITZ.
Mr. Andrew Mainardi, Jr. argued the cause for appellant (Messrs. Mainardi & Mainardi, attorneys).
Mr. Martin Klughaupt argued the cause for respondents.
The opinion of the court was delivered by CONFORD, P.J.A.D.
The Chancery Division entered summary judgment in favor of defendants, and plaintiff appeals.
Plaintiff ("TAMAC") is an unincorporated association of 14 travel agencies, formed under authority of N.J.S.A. 2A:64-1, whose individual business operations are conducted in the northeastern part of the State. Defendant Regal Tours, Inc. ("Tours") is a travel agency operating in the same general area. Defendant Regal Cultural Society, Inc. ("Cultural Society") is a corporation apparently having a close working relationship with Tours. Plaintiff contends that the sole or dominant purpose of Cultural Society is to sell its members cut-rate air travel on charter flights arranged for by *188 Tours and that the public is solicited to become members for that and no other bona fide organizational purpose; that Tours has organized and runs Cultural Society for such purposes and its own profit, and that these purposes, objects and activities are in violation of a contract among International Air Transport Association ("IATA"), travel agents authorized to issue airline tickets for transport on member airlines of IATA (including members of TAMAC and Tours) and such member airlines.
Plaintiff alleges that the contract violation by Tours consists of the scheduling and arrangement of charter flights "by non-affinity groups," contrary to express provision of the IATA agreement "and to the great detriment of all travel agents within the customer area of the plaintiff's organization members."
By reason of the foregoing plaintiff sought an injunction and damages.
By amendment of the complaint plaintiff charged that in violating the IATA agreement defendants were in contravention of (a) the New Jersey Fair Trade Act (actually denominated "Fair Sales Act")), N.J.S.A. 56:4-1 et seq., and (b) the regulations of the federal Civil Aeronautics Board ("C.A.B.") as they pertain to charter flights. That agency has promulgated regulations of charter flights basically prohibiting charter flight operations such as those plaintiff artributes to defendants except where exemptions are granted by it; and plaintiff further contends on this appeal that when a travel agency so conducts itself it becomes, in effect, an indirect air carrier, and, if not certificated by the C.A.B., as defendants are not, is in violation of the Federal Aviation Act of 1958 (49 U.S.C.A. § 1301 et seq.)
Defendants filed an answer generally denying the allegations of the complaint and setting forth separate defenses which, so far as material on this appeal, can be conveniently discussed in terms of the reasons stated by the trial court in granting the motion for summary judgment in favor of defendants and relied upon by them on this appeal.
*189 We need not discuss in detail the contesting affidavits of the parties filed below in relation to the issue of whether Tours directs and controls the operations of Cultural Society and whether Cultural Society was formed or is operated bona fide for purposes other than promoting travel of its members, or, to the contrary, functions for the sole purpose of promoting the travel of its members, including air travel, on a discount basis through arrangements effected by Tours. We find genuine issues of fact to be presented in those regards.
The trial court gave the following reasons for its determinations:
1. Plaintiff had no standing to bring the suit in relation to any of the causes of action pleaded because it was an unincorporated organization and any injury to plaintiff's members was actionable only in a suit brought by them individually and not by suit of an organization.
2. Plaintiff was not entitled to sue as a third-party beneficiary of the IATA contract with Tours because not intended as a beneficiary thereof.
3. There was no cause of action under the Fair Trade Act because plaintiff was not a producer or distributor of anything, and more particularly, not of a "commodity," within the intent of N.J.S.A. 56:4-6.
4. No cause of action lay for redress of grievance arising out of alleged violation by defendants of regulations of the Civil Aeronautics Board since plaintiff failed to exhaust the administrative remedies provided for by the Federal Aviation Act; further, that the special expertise of the agency made prior resort to that avenue of relief appropriate and necessary. We proceed to a discussion of the issues raised.

I.  Breach of Contract

It appears clear to us, and plaintiff practically concedes, that admeasurement by a judge or jury of damages caused any of plaintiff's members through defendant's activities would be a practical impossibility. While it is readily understandable that in all probability competing travel agents *190 in a given area selling air transportation at lawful rates would sustain losses through the competition of another agent selling the same market at illegally low rates, the incidence or amount of the particular damage of any one or more of plaintiff's members would be speculative to the point of precluding a valid specific award.
Moreover, the members are not plaintiffs herein, and the actual plaintiff is in no sense an intended beneficiary of the IATA contract even if its members are to be regarded as such. While we are hereinafter recognizing the right of organizations like plaintiff to represent their members in certain matters of collective interest, we know of no authority for permitting an organization to sue for contract damages when the parties to the contract are only the individual members of the organization in their individual capacities.
We therefore agree with the trial court in dismissing the complaint so far as based upon alleged breach of the IATA contract.

II.  Fair Trade Act

Plaintiff contends that the rates charged by airlines for air travel are governed by the Fair Trade Act and that defendants' reduced rate practices, since contrary to the IATA agreement, violate that act and are actionable thereunder. That act provides that no contract "relating to the sale or resale of a commodity which bears * * * the trade-mark, brand, or the name of the producer or owner of such commodity" shall be deemed in violation of any New Jersey law by reason of inclusion therein of any of certain specified provisions. N.J.S.A. 56:4-5. It also provides that the willful sale or advertising of any "commodity" at less than the price stipulated in any such contract as is described in section 56:4-5, whether the person so advertising or offering for sale is or is not a party to the contract, is unfair competition and is actionable at the suit of the producer or distributor or of any retailer selling such commodity. N.J.S.A. 56:4-6.
*191 N.J.S.A. 56:4-3 defines "commodity" as "any subject of commerce." It is quite evident, reading sections N.J.S.A. 56:4-5 and 6 in pari materia, that the "commodities" in contemplation are tangible articles of the type commonly sold under a trade name or brand and not a ticket for a service such as is here involved. See Menley and James Laboratories, Ltd. v. Vornado, Inc., 90 N.J. Super. 404, 411 (Ch. Div. 1966); U.S. Time Corp. v. Grand Union Co., 64 N.J. Super. 39 (Ch. Div. 1960).
Further evidence of such statutory intent is apparent from the title of the source act, L. 1935, c. 58, "An act to protect trademark owners, distributors and the public against injurious and uneconomic practices in the distribution of articles of standard quality under a distinguished trade-mark, brand or name." (Emphasis ours.)
We conclude the trial court was right in finding no cause of action under the Fair Trade Act.

III.  Federal Aviation Act

There remains for consideration the question whether plaintiff projects a cause of action under the Federal Aviation Act of 1958 (49 U.S.C.A. § 1301 et seq.). (In this regard, any relief granted herein would be only injunctive. As noted above, plaintiff's damages are not measurable.) This breaks down into these sub-issues: (a) standing of plaintiff to sue on behalf of its members; (b) the existence of a cause of action and availability of judicial relief; (c) whether a state court possesses jurisdiction to enjoin violation of the act and regulations of the Civil Aeronautics Board, and (d) whether judicial relief should be withheld on the basis of either the doctrine of primary jurisdiction or that of exhaustion of administrative remedy.
This court, on notice to the parties, solicited an amicus brief from the C.A.B. on some of the questions implicated in the instant point, as posed by us. The C.A.B. has declined to submit a brief, but we have been tendered a memorandum *192 by R. Tenney Johnson, Esq., General Counsel to C.A.B. ("Gen. Couns. Mem.")[1] We have given consideration thereto and to supplemental briefs of the parties addressed thereto. Gen. Couns. Mem. takes no position on the existence here of state court, as distinguished from federal court jurisdiction, but advises, in substance, that if plaintiff's allegations are true, (1) defendants are functioning as an "indirect air carrier" without an authorizing certificate from the C.A.B.; (2) in such case injunctive relief against violation of the act and C.A.B. regulations can be granted by a federal district court at the instance of any party in interest; (3) plaintiff is such a party in interest; (4) entertainment of the present action (assuming state court jurisdiction) would not offend any public policy underlying the Federal Aviation Act in relation to the commitment of "cease and desist" jurisdiction to the C.A.B.; (5) resolution of the instant controversy does not peculiarly call for nor would it be expedited by C.A.B. expertise and special knowledge, and (6) entertainment of judicial jurisdiction to issue an injunction would be consonant with the act and its objectives and not discordant therewith.

(a) Standing of Plaintiff to Sue.

In attacking the status of plaintiff to sue as representative of its members defendant and the trial court relied essentially upon New Jersey Bankers Ass'n v. Van Riper, 1 N.J. 193 (1948). However, the narrow view of representational standing reflected by that decision has been emphatically rejected by the Supreme Court in Crescent Pk. Tenants Ass'n v. Realty Eq. Corp. of N.Y., 58 N.J. 98, 111 (1971). We are satisfied that upon the basis of that holding and the considerations there set forth plaintiff association has standing to represent the interests of its members, as affected by the activities of defendants, in the context of an injunctive action *193 such as that here presented  one implicating an important segment of the national public policy affecting New Jersey businessmen. See also N.J. Chapt., Am. I.P. v. N.J. State Bd. of Prof. Planners, 48 N.J. 581, 587-88, app. dism., cert. den., 389 U.S. 8, 88 S.Ct. 70, 19 L.Ed.2d 8 (1967).

(b) Cause of Action and Availability of Judicial Relief.

The Federal Aviation Act of 1958 provides for enforcement of the act itself and regulations issued by the C.A.B. thereunder in two ways: (a) cease and desist orders by the agency, 49 U.S.C.A. § 1482(c); and (b), by authority of 49 U.S.C.A. § 1487(a), injunction by a federal district court at the suit of the Government on behalf of the C.A.B., or, on complaint by "any party in interest," in the case of a violation of 49 U.S.C.A. § 1371(a). The latter section provides that "[n]o air carrier shall engage in any air transportation unless there is in force a certificate issued by the Board authorizing such air carrier to engage in such transportation."[2]
One not directly conducting carrier operations can be regarded as an "indirect air carrier" subject to the interdiction of section 1371(a), since 49 U.S.C.A. § 1301(3) defines an "air carrier" to include not only those persons who "directly" engage in air transportation but those who do so "indirectly" or "by lease or other arrangement." The C.A.B. and the courts have thus deemed subject to regulation under the act as indirect air carriers any persons whose relationship to the public is such that the passengers with whom they deal are well aware that the transportation which is being offered will subsequently be provided by an airline pursuant to arrangements with such person, but where the person is not acting as an authorized agent of any airline in the consummation *194 of arrangements between any such airline and the passengers. See Pan American World Airways, Inc. v. C.A.B., 392 F.2d 483, 486, 488, 495 (D.C. Cir.1968); Monarch Travel Services, Inc. v. Associated Cultural Clubs, Inc., (unreported) C.A. No. 71-1176 (D.C.C.D. Cal. 6-4-71) (a holding directly in point on the merits of this case); Hacienda Hotels-U.S. Aircoach Enforcement Proceeding, 26 C.A.B. 372, 385 (1958); Continental Express, Inc., C.A.B. Docket 21837, Order 70-6-84 (6-12-70); American British Canadian Club, C.A.B. Docket 21840, Order 70-5-47 (5-12-70); United California Social Club, C.A.B. Docket 21841, Order 70-5-105 (5-21-70); cf. World Airways, Inc. v. Northeast Airlines, Inc., 349 F.2d 1007 (1st Cir.1965); Northeast Airlines, Inc. v. Nationwide Charters and Conv. Inc., 286 F. Supp. 362 (D.C. Mass. 1968), mod., 413 F.2d 335 (1 Cir.1969); Consolidated Flower Shipments v. Civil Aeronautics Bd., 213 F.2d 814 (9 Cir.1954).
Gen. Couns. Mem. has pointed out to us that the act does not preclude legitimate indirect air carrier activities. The act permits the Board to allow exemption to indirect air carriers from its requirements to such extent "as may be in the public interest," 49 U.S.C.A. § 1301(3), and the Board has occasionally done so in relation to charter services. But defendants have been granted no such exemption.
We need not here detail the rules and regulations of the C.A.B. cited by plaintiff which indicate that, in general, and subject to exceptions and exemptions not here applicable, authorized charter flights are only those sold to groups which have a bona fide affinity prior to the particular flight and are organized and maintained independent of purposes of securing air travel for their members at reduced charter rates. As indicated above, a genuine issue of fact is here presented on the record below as to whether defendants' activities would violate such regulations even were they certificated by the Board as indirect air carriers.
In Monarch Travel Services, Inc. v. Associated Cultural Clubs, Inc., supra, a United States District Court in California *195 last summer enjoined activities in many respects similar to those plaintiff charges defendants to be here engaging in on the ground that the defendants were operating as indirect air carriers without a certificate and in a manner violative of C.A.B. regulations governing charter flights. The case is a direct precedent here, saving only the issue of state court jurisdiction.
Plaintiff, on the allegations in its complaint of competitive injury to its members because of defendants' activities, is a "party in interest" entitled to maintain an action for injunction pursuant to 49 U.S.C.A. § 1487(a). Northeast Airlines Inc. v. Nationwide Charters and Conv. Inc., supra; Monarch Travel Services, Inc. v. Associated Cultural Clubs, Inc., supra. Gen. Couns. Mem. indorses the interest of plaintiff to maintain the action.

(c) State Court Jurisdiction.

As noted above, 49 U.S.C.A. § 1487(a) expressly confers jurisdiction on the federal district courts to enjoin violation of the act or regulations thereunder where an air carrier is operating without a certificate. The act is silent as to jurisdiction of state courts.
It is well settled that where Congress creates a federal cause of action, as it has done here, entertainment of jurisdiction by a state court internally empowered to exercise jurisdiction in a matter of that kind, in order to vindicate the federal right, is not precluded unless Congress has indicated expressly or impliedly that the jurisdiction of the federal court is to be exclusive. Dowd Box Co. v. Courtney, 368 U.S. 502, 507-508, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962); Testa v. Katt, 330 U.S. 386, 167 S.Ct. 810, 91 L.Ed. 967 (1947); Mondou v. New York, N.H. & H.R. Co., 223 U.S. 1, 56-59, 32 S.Ct. 169, 56 L.Ed. 327 (1911); Gray v. Serruto Builders, Inc., 110 N.J. Super. 297 (Ch. Div. 1970).
In Dowd Box Co. v. Courtney, supra, involving section 301(a) of the Labor Management Relations Act of 1947, *196 which vests jurisdiction in the federal district courts (not mentioning state courts) over suits for violation of collective bargaining agreements, the court had before it the question whether the courts of Massachusetts had jurisdiction to enjoin the violation of such a contract by an employer. Although recognizing that the labor act had created new federal substantive law in this area (Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957)), the court nevertheless held that Congress did not intend to oust the state courts of jurisdiction to restrain breach of such contracts. It said:
It has not been argued, nor could it be, that § 301(a) speaks in terms of exclusivity of federal court jurisdiction over controversies within the statute's purview. On its face § 301(a) simply gives the federal district courts jurisdiction over suits for violation of certain specified types of contracts. The statute does not state nor even suggest that such jurisdiction shall be exclusive. It provides that suits of the kind described `may' be brought in the federal district courts, not that they must be. [368 U.S. at 506, 82 S.Ct. at 522]
Further:
We start with the premise that nothing in the concept of our federal system prevents state courts from enforcing rights created by federal law. Concurrent jurisdiction has been a common phenomenon in our judicial history, and exclusive federal court jurisdiction over cases arising under federal law has been the exception rather than the rule. This Court's approach to the question of whether Congress has ousted state courts of jurisdiction was enunciated by Mr. Justice Bradley in Claflin v. Houseman, 93 U.S. 130, 23 L.Ed. 833, and has remained unmodified through the years. "The general question, whether State courts can exercise concurrent jurisdiction with the Federal courts in cases arising under the Constitution, laws, and treaties of the United States, has been elaborately discussed, both on the bench and in published treatises ... [and] the result of these discussions has, in our judgment, been ... to affirm the jurisdiction, where it is not excluded by express provision, or by incompatibility in its exercise arising from the nature of the particular case." [Citing cases; at 507-508, 82 S.Ct. at 522]
Anticipating the holding in Dowd Box was the comprehensive opinion of Justice Traynor in McCarroll v. Los Angeles *197 County Dist. Coun. of Car., 49 Cal.2d 45, 315 P.2d 322 (Sup. Ct. 1957).
In Mondou v. New York, N.H. & H.R. Co., supra, three actions had been brought in different state courts for recovery of damages under the Federal Employers' Liability Act enacted in 1908 and amended in 1910. The 1908 act did not specify the courts having jurisdiction but the 1910 amendment gave jurisdiction to the United States circuit courts (then courts of original jurisdiction) and stated such jurisdiction should be "concurrent with that of the courts of the several states." In each case the accident and institution of the action preceded the adoption of the amendment. One state court refused to accept jurisdiction; the others did not. The court held the state courts were required to accept jurisdiction. In so ruling it quoted from the leading case of Claflin v. Houseman, 93 U.S. 132, 136, 23 L.Ed. 833 (1876) (which was also quoted in the excerpt quoted above from Dowd Box Co. v. Courtney, supra) as follows:
`The laws of the United States are laws in the several states, and just as much binding on the citizens and courts thereof as the state laws are. The United States is not a foreign sovereignty as regards the several states, but is a concurrent, and, within its jurisdiction, paramount, sovereignty ... If any act of Congress gives a penalty [meaning civil and remedial] to a party aggrieved, without specifying a remedy for its enforcement, there is no reason why it should not be enforced, if not provided otherwise by some act of Congress, by a proper action in a state court. The fact that a state court derives its existence and functions from the state laws is no reason why it should not afford relief; because it is subject also to the laws of the United States, and is just as much bound to recognize these as operative within the state as it is to recognize the state laws. The two together form one system of jurisprudence, which constitutes the law of the land for the state; and the courts of the two jurisdictions are not foreign to each other, nor to be treated by each other as such, but as courts of the same country, having jurisdiction partly different and partly concurrent.... It is true, the sovereignities are distinct, and neither can interfere with the proper jurisdiction of the other, as was so clearly shown by the Chief Justice Taney, in the case of Ableman v. Booth, 21 How. 506, 16 L.Ed. 169; and hence the state courts have no power to revise the action of the Federal courts, nor the Federal the state, except where the Federal Constitution or laws are involved. But this is no reason why the state courts should not *198 be open for the prosecution of rights growing out of the laws of the United States, to which their jurisdiction is competent, and not denied,' [223 U.S. at 57-58, 32 S.Ct. at 178; emphasis ours]
The Mondou court rejected the argument that the 1908 act was intended to restrict jurisdiction to the federal courts, or that such intent could be derived from the 1910 amendment affirmatively granting state courts concurrent jurisdiction. The court held that the original act contained nothing indicative of such intent, and it referred to the general jurisdictional act giving the circuit courts original cognizance, concurrent with those of the states, of all suits of a civil nature at common law or in equity when the amounts in controversy exceeded a stated sum, "arising under the Constitution or laws of the United States" (emphasis by the Supreme Court). 223 U.S. at 56, 32 S.Ct. at 177, 56 L.Ed. 327. As to the 1910 amendment, the court said: "The amendment, as appears by its language, instead of granting jurisdiction to the state courts, presupposes that they already possessed it." Ibid.
To be contrasted with the jurisdictional language of 49 U.S.C.A. § 1487(a) is that of the Securities and Exchange Act of 1938 (15 U.S.C.A., § 78 aa) which gives the federal courts "exclusive jurisdiction of violation of this chapter or the rules and regulations thereunder and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder." There, of course, Congress has expressly precluded state court jurisdiction. Gallo v. Mayer, 50 Misc.2d 385, 270 N.Y.S.2d 295, 299 (Sup. Ct. 1966), aff'd 272 N.Y.S.2d 1007, 26 A.D.2d 773 (App. Div. 1966); cf. Trad v. Hodes, 72 N.J. Super. 306 (Law Div. 1962).
Putting to one side questions of primary jurisdiction or exhaustion of administrative remedies, discussed later herein, we find no evidence in the Federal Aviation Act as a whole, or in 49 U.S.C.A. § 1487(a) thereof, to support the notion of congressional intent to disturb, in a case such as this, the ordinary presumption that state courts have general concurrent *199 jurisdiction with federal courts to enforce federal law at the suit of an aggrieved citizen, or "party in interest," as § 1487(a) puts it. Note, moreover, that 49 U.S.C.A. § 1506 provides: "Nothing contained in this act shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies." (Emphasis ours)
We see nothing in the special competence of federal district courts, as compared with our own courts of general equity jurisdiction, to justify a belief that Congress thought the former so peculiarly apt in the resolution of the question as to what constitutes an air carrier that they alone, and not state courts, should exercise the judicial jurisdiction expressly created by § 1487(a) to enjoin the (indirect) air carrier function where not accompanied by possession of a C.A.B. certificate. The issue of state court jurisdiction in this area is not affected by the consideration of agency expertise since federal courts have been specifically vested with jurisdiction, and there is no reason to deem them more expert as to such a question than state courts. This, particularly, since the substantive questions requiring adjudication boil down basically, as noted earlier herein, to the fact issues as to (a) whether Cultural Society was formed and functions bona fide as an affinity group for purposes other than and independent of the purpose of providing its members air travel at reduced charter rates, and (b) whether Tours and Cultural Society, or either, is arranging charter air travel for the public other than as agents of airlines  fact issues of a kind familiar to and within the ready competence of state courts equally with federal courts. Cf. Northeast Airlines, Inc. v. Weiss, 113 So.2d 884 (Fla. D.C. App. 1959), cert. den. 116 So.2d 772 (Fla. Sup Ct. 1959).
We conclude the Chancery Division had jurisdiction insofar as the cause of action for injunction rests upon § 1487(a) of Title 49.

*200 (d) Primary Jurisdiction and Exhaustion of Administrative Remedy.

The doctrine of primary jurisdiction is that which determines whether the administrative agency rather than the court should make the initial decision in a case where the agency is given statutory jurisdiction to afford the same remedy. 3 Davis, Administrative Law, § 19.01 at 2 (1958). The doctrine of exhaustion bears upon the question as to the stage of completion or lack of completion of administrative action which determines appropriateness of grant of judicial relief. Id., § 20.01 at 57. From that approach the present case suggests a primary jurisdiction rather than exhaustion problem since there was no pending agency proceeding when this suit was instituted.
Prima facie, there is no violation of the primary jurisdiction doctrine here since the action is not one to determine a rate or rule or the reasonableness thereof, or a close question as to the meaning of an administrative rule lying within agency expertise, but simply one to enjoin a prohibited departure from a rule or practice of already well-defined meaning. See 3 Davis, op. cit. § 19.02 at 8-9; Pennsylvania R. Co. v. International Coal Min. Co., 230 U.S. 184, 33 S.Ct. 893, 57 L.Ed. 1446 (1912); Civil Aeronautics Board v. Modern Air Transport, 179 F.2d 622 (2 Cir.1950); World Airways, Inc. v. Northeast Airlines, Inc., supra (349 F.2d at 1010-1011); Northeast Airlines, Inc. v. Weiss, supra; cf. Trans-Pacific Airlines v. Hawaiian Airlines, 174 F.2d 63, 66 (9 Cir.1949). Gen. Couns. Mem., discussed above, while of course not binding on us, is persuasive that no special agency expertise exists with respect to the fairly narrow substantive questions here requiring factual adjudication and that no other consideration calls for abnegation of jurisdiction here on the basis of the doctrine of primary jurisdiction.
To the extent that the doctrine of exhaustion is sometimes considered in terms of the criteria of that of primary jurisdiction, *201 what we have said above applies here also in connection with the argument for postponement of judicial relief on exhaustion grounds. We add that Gen. Couns. Mem. also supports acceptance of judicial jurisdiction here as against any exhaustion consideration. That document, in addition to our summary of some of its conclusions above, also answers in the affirmative our question, "Whether the workload or other exigencies of the C.A.B. are such that the filing with it of a complaint of this kind would entail substantial delay before adjudication?" Such procedures were described as "time-consuming" in World Airways, Inc. v. Northeast Airlines, Inc., supra (349 F.2d 1010).
In Northeast Airlines, Inc. v. Weiss, supra, a state court accepted jurisdiction of an action for damages by an airline against an airport for charging discriminatory airport fees contrary to C.A.B. regulations. The court found the doctrine of primary jurisdiction not applicable, not deeming the question presented to call for agency expertise or considerations of uniformity of application (113 So.2d at 888). But the court declined jurisdiction to enjoin the discriminatory activity on the "exhaustion" theory that the agency could order the defendant to cease and desist. This seems dubious on principle. In any event, however, the ruling is distinguishable in the present context as the violation there did not implicate a statutory provision affirmatively authorizing judicial injunctive relief, as does § 1487(a) in relation to the activity of the defendants here. Cf. Wills v. Trans World Airlines, Inc., 200 F. Supp. 360 (D.C.S.D. Cal. 1961).
It will be recalled that the California federal court in Monarch Travel Services v. Associated Cultural Clubs, supra, granted injunctive relief precisely parallel with that sought here, with apparent unconcern over the doctrines either of primary jurisdiction or exhaustion of administrative remedy.
We conclude that the judgment under review was correct insofar as plaintiff sought damages for breach of contract or for violation of the Fair Trade Act but that it should be reversed to the extent that the complaint as expanded in *202 scope on this appeal is based on the claim for injunctive relief under the Federal Aviation Act.
Reversed and remanded for further proceedings consistent with this opinion. Costs to abide the event.
NOTES
[1] The memorandum is not submitted as necessarily representing the views of the C.A.B. but only those of General Counsel.
[2] Although this ground of jurisdiction was not specified in the amended complaint it has been fully argued on this appeal, without prejudice to defendants, and we conclude we should consider it in order to decide the merits of the matter  a subject of substantial public importance. The complaint may be amended accordingly.