276 N.J. Super. 121 (1994)
647 A.2d 491
FAROUK EL-MENSHAWY AND ENSHEREH EL-MENSHAWY, PLAINTIFFS,
v.
EGYPT AIR AND ESMA TRAVEL CO., INC., DEFENDANTS.
Superior Court of New Jersey, Law Division Monmouth County.
Decided May 27, 1994.
*123 Gil D. Messina for plaintiffs (Messina & Laffey, attorneys).
Andrew J. De Maio for defendant Esma Travel Co., Inc. (De Maio & De Maio, attorneys).
Kathleen R. Wall for defendant Egypt Air.
FISHER, J.S.C.

I

INTRODUCTION
Plaintiffs allege that they held a confirmed reservation for a return flight from Cairo on Egypt Air on August 5, 1990. Defendant Egypt Air contends that plaintiffs were never issued a confirmed reservation for that date. Plaintiffs seek damages as a result of the expenses and inconvenience they incurred by reason of this alleged event[1].
Assuming plaintiffs' contentions to be true for purposes of this motion, Egypt Air nevertheless argues that the claim is preempted by the Federal Aviation Act of 1958 (the FAA), as amended by the Airline Deregulation Act of 1978 (the ADA), and seeks the entry of summary judgment. Defendant Esma Travel Co., Inc. (the travel agent) also seeks summary judgment on preemption grounds.
The starting point for examining the application of federal preemption regarding the airline industry is Morales v. Trans World Airlines, Inc., 504 U.S. ___, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). In assessing Morales' impact on the common law claims of plaintiffs, the court is fortunate to have available the insightful opinion in Vail v. Pan Am Corp., 260 N.J. Super. 292, *124 616 A.2d 523 (1992). There is little that this court need or should state with respect to the impact of Morales that was not already thoroughly examined by Judge Havey in Vail. This case merely presents the application of Morales and Vail to a different, but commonplace, factual situation.

II

POST-MORALES PREEMPTION
To briefly reiterate what the courts in Morales and Vail canvassed far more cogently, Congress preempted state statutory and common law when it enacted 49 U.S.C.A. app. § 1305(a)(1). "[T]o maximize reliance on `competitive market forces'," Vail, supra, 260 N.J. Super. at 296, 616 A.2d at 524-25, the ADA prohibits the states from enforcing any law "relating to rates, routes, or services of any air carrier," 49 U.S.C.A. app. § 1305(a)(1). The Court in Morales emphasized that the phrase "relating to" was intended to "express a broad preemptive purpose." Morales, supra, 504 U.S. at ___, 112 S.Ct. at 2037, 119 L.Ed.2d at 167. Thus, state actions "having a connection with or reference to airline `rates, routes, or services' are preempted" by the ADA. Vail, supra, 260 N.J. Super. at 298, 616 A.2d at 526 (quoting Morales, supra, 504 U.S. at ___, 112 S.Ct. at 2037, 119 L.Ed.2d at 167).[2]
The "broad preemptive purpose" of these statutes is unmistakable. It only remains for the courts to sort out and determine, on a case-by-case approach, which of the myriad claims impacting on the airline industry are preempted. Morales held preempted state regulation of fare advertising. Vail held preempted a claim that an air carrier falsely advertised a "far-reaching security program ... [in order to provide a] safe and secure environment *125 for [their] passengers." 260 N.J. Super. at 299, 616 A.2d at 526. In both instances, those Courts found that those claims clearly "related to" airline fares and services. These motions present Morales preemption to a claim that an airline failed to honor a confirmed reservation or, in the alternative, that a travel agent failed to confirm such a reservation.

III

THE APPLICATION OF MORALES PREEMPTION TO THE CLAIMS PRESENTED HEREIN

A. The Claim Against Egypt Air
Plaintiffs' claim against Egypt Air  that it failed to honor an allegedly confirmed reservation  beyond a shadow of a doubt "relates to" airline services. Indeed, the issue would hardly be debatable if not for West v. Northwest Airlines, Inc., 995 F.2d 148 (9th Cir.1993).
In West, a claim was asserted against an airline for breach of the covenant of good faith and fair dealing under Montana law when plaintiff was denied a seat on an overbooked flight. The district court granted summary judgment on preemption grounds. The Court of Appeals for the Ninth Circuit held that the punitive damage claim was preempted but not the compensatory damage claim. 923 F.2d 657 (9th Cir.1991). The Supreme Court granted the certiorari petitions of both parties, vacated the Court of Appeals' judgment and remanded for reconsideration in light of Morales. See, West, ___ U.S. ___, 112 S.Ct. 2932, 119 L.Ed.2d 558 ___ U.S. ___, 112 S.Ct. 2986, 120 L.Ed.2d 864 (1992).
On remand, however, the Court of Appeals continued to hold that only the punitive damage claim was preempted despite Morales' broad reading of the preemption clause. In so holding, the West Court relied heavily on the following comments in Morales:
[W]e do not ... set out on a road that leads to pre-emption of state laws against gambling and prostitution as applied to airlines. Nor need we address whether state regulation of the nonprice aspects of fare advertising ... would similarly *126 `relat[e] to' rates; the connection would obviously be far more tenuous. To adapt to this case our language in Shaw [v. Delta Airlines, Inc., 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)], `[s]ome state actions may affect [airline fares] in too tenuous, remote, or peripheral a manner' to have pre-emptive effect.
[West, supra, 995 F.2d at 151 (quoting Morales, supra, ___ U.S. at ___, 112 S.Ct. at 2040, 119 L.Ed.2d at 170-71).]
Morales' few examples of state action which would not be preempted, however, are wholly dissimilar from the claim in West. Nevertheless, the majority in West concluded that the tort and contract claims presented therein were "within that range of statutes too tenuously connected to airline regulation to trigger preemption under the ADA, what the Morales court called `borderline questions.'" 995 F.2d at 151.
On the other hand, Judge Brunetti wrote separately and took issue with his colleagues' views in West:
We must reach the same result here as the Court reached in Morales itself  that the suit is preempted  unless we can say that West's action to recover damages for his being bumped from the flight does not "relate to" airline services. I am unable to reach this conclusion.
An airline's boarding practices certainly come within the ambit of the "airline services" which it provides to its customers. We expressly recognize this in our original opinion. 923 F.2d at 660. Aside from a state law explicitly barring the practice, one strains to conceive of an action which could relate to those services more directly than a lawsuit seeking damages for the inevitable result of those boarding practices  a passenger getting "bumped."
[995 F.2d at 153.]
I completely agree with Judge Brunetti's analysis. The West majority's suggestion that an airline's failure to board a ticketed passenger is too tenuous or remote to airline services, or that it is even a "borderline question," constitutes a stunning indifference to Morales. It is not a path that this Court chooses to follow nor is it a result that this Court would expect our appellate courts would follow, as Vail foreshadows. Accordingly, the similar claim presented herein against Egypt Air is clearly preempted by the ADA since it unquestionably relates to the services of an airline.

B. The Claim Against The Travel Agent
The travel agent in this case also seeks summary judgment on preemption grounds. In order to determine whether that position *127 is accurate, attention must be directed to a different phrase of the preemption statute.
As indicated above, Congress has preempted any attempt by a state to enact or enforce any law "relating to rates, routes, or services of any air carrier...." 49 U.S.C.A. app. § 1305(a). With respect to the travel agent's motion, it must be determined whether the travel agent falls within the FAA's definition of "air carrier."[3] An "air carrier" is defined in the FAA as one "who undertakes, whether directly or indirectly or by a lease or any other arrangement, to engage in air transportation...." 49 U.S.C.A. app. § 1301(3). In light of the definition of "air transportation,"[4] the travel agent can only fit the definition of "air carrier" if it can be determined that it indirectly is engaged in air transportation.
In Travel Agents Malpractice v. Regal Cul. Soc., Inc., 118 N.J. Super. 184, 193, 287 A.2d 4 (1972), the Court engaged in a discussion as to the scope of the FAA's definition of "air carrier." Speaking for the Court, Judge Conford recognized the broad scope of that phrase:
One not directly conducting carrier operations can be regarded as an "indirect air carrier" ... since 49 U.S.C.A. § 1301(3) defines an "air carrier" to include not only those persons who "directly" engage in air transportation but those who do so "indirectly" or "by lease or other arrangements". The [Civil Aeronautics Board] and the courts have thus deemed subject to regulation under the Act as indirect air carriers any persons whose relationship to the public is such that the passengers with whom they deal are well aware that the transportation which is being offered will subsequently be provided by an airline pursuant to arrangements with such person, but where the person is not acting as an authorized agent of any airline in the consummation of arrangements between any such airline and the passengers.
[118 N.J. Super. at 193-194, 287 A.2d 4 (emphasis added).]
*128 The Court in Travel Agents Malpractice, supra, did not consider the question whether a travel agent may fall within the definition of "ticket agent" contained in the FAA. 49 U.S.C.A. app. § 1301(40), defines that phrase as meaning
Any person, not an air carrier ... who, as principal or agent, sells or offers for sale any air transportation, or negotiates for, or holds himself out by solicitation, advertisement, or otherwise as one who sells, provides, furnishes, contracts or arranges for, such transportation.
Since the preemption statute does not apply in favor of a "ticket agent" but only "air carriers," the question of whether the travel agent in this case is either a "ticket agent" or "air carrier" must necessarily turn on the facts and circumstances or its activities in relation to the events in question. The motion for summary judgment filed by the travel agent is unsupported by any affidavit or other evidential material upon which it can be determined whether it is a "ticket agent" or "air carrier" as defined by the FAA, and as discussed by Judge Conford in Travel Agents Malpractice, supra. Rather, the travel agent has moved solely upon what it believes to be the legal effect of its involvement in the transaction in question.[5] Since the determination of its status cannot be made in such a vacuum, the travel agent's motion for summary judgment must be denied.

IV

CONCLUSION
Based on the above analysis, Egypt Air's motion for summary judgment will be granted and the travel agent's motion will be denied.
NOTES
[1] Plaintiffs also assert that Egypt Air's alleged act of booking them on a return flight different from the one which they allegedly purchased tickets for is an unconscionable commercial practice forbidden by the Consumer Fraud Act, N.J.S.A. 56:8-1 to -48.
[2] The savings clause of the FAA, 49 U.S.C.A. app. § 1506 (which preserves "the remedies now existing at common law or by statute") is of no avail in the wake of Morales. 504 U.S. at ___, 112 S.Ct. at 2037, 119 L.Ed.2d at 167. Accord Vail, supra, 260 N.J. Super. at 298-299, 616 A.2d at 525-26.
[3] For the reasons already expressed as to defendant Egypt Air, there is no question but that the claim against the travel agent  assuming it to be an air carrier  is "relat[ed] to rates, routes, or services."
[4] 49 U.S.C.A. app. § 1301(10) defines "air transportation" as meaning "interstate, overseas, or foreign air transportation or the transportation of mail by air craft."
[5] The travel agent places its reliance upon Frontier Airlines, Inc. v. United Air Lines, Inc., 758 F. Supp. 1399 (D.Colo. 1989), wherein the court suggested that a state's attempts to regulate travel bookings were preempted by the Act. What the travel agent overlooks, however, is that the party against whom that claim was made was United Air Lines, which presumptively falls within the definition of "air carrier" in the FAA. Nowhere in Frontier is there any discussion as to what acts or conduct would take a travel agent beyond the definition of "ticket agent" into the definition of "air carrier."